IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| U.S. BANK, National Association, et al., )<br>)<br>    Plaintiff and Counterclaim )<br>    Defendants, )<br>)<br>  v. )<br>)<br>MICHAEL QUALIZZA, et al., )<br>)<br>    Defendants and Counterclaimants. ) | Case No. 4:21-cv-00120-NAB |

**COUNTERCLAIMANTS NEIL D. FREEMAN's, TIMOTHY DIXON's, DFQ MANAGEMENT LLC's AND 1501 WASHINGTON ST. LOUIS, LLC's RESPONSE IN OPPOSITION TO PLAINTIFF'S AND COUNTERCLAIM DEFENDANTS' MOTION TO STRIKE JURY DEMAND**

Defendants and Counterclaimants Neil D. Freeman and Timothy Dixon ("Owners") and Counterclaimants DFQ Management LLC ("DFQ Management") and 1501 Washington St. Louis, LLC ("1501 Washington") (collectively "Developers") hereby oppose to Plaintiff U.S. Bank National Association's and Counterclaim Defendant U.S. Bancorp Community Development Corporation (the "CDC") (collectively "U.S. Bank") Motion to Strike Developers' Jury Demand [ECF No. 64].

This action involves a complex real estate development in Downtown West St. Louis. In December 2017, the parties to this case entered a partnership to develop and construct The Last Hotel (the "Hotel"), a historic renovation of the International Shoe Company building on Washington Avenue. The building had been in disrepair for decades and through the work of Developers in partnership with U.S. Bank, the property was re-developed into a modern hotel that is currently operating, and which has dramatically improved the downtown neighborhood.

Through this lawsuit, U.S. Bank attempts to recover on guaranties signed by individuals. The Developers, in turn, seek to recover for U.S. Bank's failure to live up to its duties as a partner.

In short, U.S. Bank committed fraud preceding the agreements at issue and then took actions inconsistent with their duties as equity holders, partners, and lenders at every step of the development process.  U.S. Bank witnesses have admitted that it was in partnership with the Developers, that its role extended far beyond that of a mere lender providing a construction loan, and that it was (and is) an equity owner in the development.  This case, then, is not a typical suit on a guaranty—it involves a complex partnership, with U.S. Bank having taken on significant responsibilities as a lender, equity owner, and partner in the development.

As the Court is aware, a re-development on Washington Avenue of a historic property presents many challenges.  The success of this development hinged on the partners working together to accomplish the task at hand.  As discussed below, U.S. Bank did not live up to its obligations to do so.  At the outset, it misled the Developers about when critical equity investments would be made by U.S. Bank.  It thereafter withheld additional funding that it promised to Developers, for improper reasons.  Several U.S. Bank employees disagreed with U.S. Bank's decisions regarding the Hotel and advocated for U.S. Bank to live up to its partnership responsibilities and provide the committed financing.  U.S. Bank leadership refused to do so.

Despite this active obstruction by U.S. Bank leadership, the development ultimately finished.  The hotel opened, not long before the Covid-19 pandemic struck.  U.S Bank witnesses have admitted that the pandemic made it impossible to successfully operate a hotel or to meet financial covenants in lending documents drafted long before the pandemic.  Continuing its destructive conduct, U.S. Bank declined, contrary to the actions of every other hotel creditor known to the parties, to work with the hotel operators during this time of crisis.  Instead, at the height of the pandemic, U.S. Bank declared its $12.3 million construction loan due in full.  It began charging default interest in December 2020.  Then, on January 29, 2021, U.S. Bank initiated this action.

Perhaps not surprisingly, U.S. Bank seeks to avoid adjudicating Developers claims or defenses by a jury, and filed a motion on July 8, 2022, to strike Developers' jury trial demand [ECF No. 64]. U.S. Bank's motion should be denied. Developers did not knowingly and voluntarily agree to U.S. Bank's unnegotiated, take-it-or-leave-it jury waivers, and the invalid contractual boilerplate contained therein cannot defeat the Constitutional presumption against jury trial waivers. Independently, U.S. Bank waived the dispute resolution section of the State Historic Tax Credit Purchase Agreement when it failed to pursue arbitration on that matter. Moreover, the scope of U.S. Bank's jury waivers does not cover 1501 Washington St. Louis's non-contractual claims of tortious interference and negligent misrepresentation.

**I.      The Claims and Defenses at Issue in the Jury Demand**

When considering whether a jury trial is appropriate, it is important to understand at the outset the claims and defenses at issue. Here, these claims are classic jury-trial issues involving bad faith, fraud, and breach of partnership and contractual duties by U.S. Bank.

As admitted by U.S. Bank, the parties to this transaction, namely U.S. Bank and Developers, have a long-running relationship that shapes their duties and actions towards each other. Ex. A, S. Kramer Depo. Tr., 88:2-22; 94:19-95:14; 97:12-21; 113:12-20; 115:21-117:4. Prior to the Hotel deal, the parties primarily executed deals where Developers served as New Markets Tax Credits (NMTC) investors through affiliated entities. S. Kramer Depo. Tr., 12:23-13:24. Developers brought hundreds of millions of dollars in deals to the CDC, such that their NMTC business, Urban Development Fund, LLC, was the third largest NMTC awardee that the CDC had worked with at the time of the events in this case. Ex. B, "Annual Review – 1501 Washington St, LLC.docx," p. 2.

Developers relied on this long-running relationship when they agreed to renovate the International Shoe Company building after it sat vacant for years. S. Kramer Depo. Tr., 96:7-11;

20:22-21:5. The project was an exceptional challenge, *id.* at 20:15-18; 96:12-14, in part because the specific neighborhood had not seen investment in many years, and historic renovations always entail substantial uncertainty. Despite this challenge, U.S. Bank employees agree that, now that the building is complete, the renovation is a great benefit to the neighborhood, and that the Hotel itself is an impressive building and asset.[1] *Id.* at 19:4-21; Ex. C, R. Espeland Depo. Tr., 34:19-36:19.

In this deal and others, U.S. Bank and Developers have a partnership relationship. *Id.* at 39:16-40:17; 89:12-17; R. Espeland Depo. Tr., 24: 1-12; 25:10-13; 34:3-13; 59: 14-19; 61:9-19. U.S. Bank must be a partner for it to claim the federal Historic Tax Credits (FHTCs) generated by this transaction. S. Kramer Depo. Tr., 39:16-40:17.[2] Despite this partnership, U.S. Bank has admitted in sworn testimony that it exhibited no consideration or interest in preventing harm to Developers. S. Kramer Depo. Tr., 169:23-170:10. Instead, U.S. Bank chose to harm Developers.

First, as a partner to the deal, U.S. Bank misrepresented, before the contracts were executed, that $10 million in state historic tax credits (SHTCs) would be received for the project (and then acquired by the bank) two months after the Hotel was completed. R. Espeland Depo. Tr., 69:10-15; 83:14-25. However, *at the time U.S. Bank made this representation*, U.S. Bank's most experienced SHTC officer *knew*, leading up to closing in December 2017, that a 12-month or more timeline for SHTC approval was to be expected. R. Espeland Depo. Tr., 38:17-40:20; 70:8-24. U.S. Bank never shared this information with Developers and instead informed them that approval could be expected immediately upon completion of the Hotel. This delay, and the Bank's fraudulent misrepresentation thereof, was extremely harmful to the development, as U.S. Bank knew that those

---

[1] The CDC benefits from the Hotel being blocks from its offices. S. Kramer Depo. Tr., 20:17-21.
[2] The CDC itself is a business line of U.S. Bank and does not have its own board or any ability to enter into deals except through the approval of U.S. Bank. Ex. D, Corporate Rep. Depo. Tr., 22:18-23:13. Accordingly, the corporate distinction between the CDC and U.S. Bank is insignificant to their responsibilities as partners.

4

proceeds would be used to pay down a bridge loan accruing 15% interest. Developers would not have executed this deal had U.S. Bank accurately represented that Missouri SHTC certificates were being received one year after the Hotel was completed, in a best-case scenario. Ex. E, N. Freeman Decl., ¶15; Ex. F, T. Dixon Decl., ¶9.[3] This fraudulent misrepresentation preceded the contracts that U.S. Bank now relies on for its claim and defenses and that contain the jury waivers now at issue.

After the deal was closed, U.S. Bank used the parties' relationship as leverage *against* Developers, threatening their relationship if Developers failed to settle a dispute with construction company Paric Corporation ("Paric"). S. Kramer Depo. Tr., 71:15-73:10; Ex. G, S. Kramer Depo. Ex. 2; Ex. H, R. Donlan Depo. Tr., 30:3-31:12. Further, U.S. Bank helped Paric by refusing to fund the FHTC equity payments while the dispute was pending. When 1501 Washington subpoenaed construction auditor Capital Consultants (U.S. Bank's consultant) for reports showing Paric's position was unsupported, U.S. Bank interfered again, S. Kramer Depo. Tr., 57:22-59:1, using the subpoena as further excuse not to fund the FHTC payments.[4] Ex. I, S. Kramer Depo. Ex. 15.

U.S. Bank caused this harm even though its employees advocated exercising discretion as a partner to benefit the deal as a whole and take a less punitive approach. In the weeks leading up to the Covid-19 pandemic, these employees advocated that U.S. Bank (1) make its SHTC purchase earlier, acknowledging that SHTC is an entitlement program certain to fund; (2) reverse U.S. Bank's decision to pay less in FHTCs based on delays that were not Developers' fault[5]; and

---

[3] U.S. Bank filed its motion before deposing Developers, and their declarations cited herein are unrebutted.
[4] U.S. Bank withheld the same funding after a demolition contractor filed a lien and lawsuit even though it was obvious the lawsuit, which was dismissed within weeks, had no merit. S. Kramer Depo. Tr., 155:7-16; Ex. J, B. Shelton Depo. Tr., 49:16-50:11.
[5] U.S. Bank employees Brian Shelton, Steve Kramer, and Eric Jones all stated that U.S. Bank should have exercised its discretion to pay the full amount of FHTCs, because delays in Hotel

(3) provide its third FHTC equity payment in a more timely manner.  Ex. J, K. Hansen Depo. Tr., 65:22-23; 67:10-69:14; Ex. L, K. Hansen Depo. Ex. N, 3-4.  Laura Vowell requested this action in February of 2020 to "return" the deal to "normalcy," *id.* at 3, after Developers had been paying 15% interest on bridge loans, Ex. M, Dec. 17, 2021, Ltr from Octagon Credit Partners LP to DFQ Management LLC.  When making this request, Ms. Vowell advocated that

> [t]he above conditions would allow [U.S. Bank] to secure repayment of the USBNA loan and fund the Third Equity installment and SHTC Purchase without much, if any, additional risk to the [B]ank. . . .  The points all reasonably reflect waivers we have given in other transactions and do not present any additional material risk to U.S. Bank.

Ex. L, K. Hansen Depo. Ex. N, 3-4.

Instead of following its employees' recommendations, U.S. Bank rejected this course of action and transferred the deal to U.S. Bank's Special Assets Group ("SAG") shortly after a critical conversation between Michael Qualizza and CDC CEO Zachary Boyers on January 30, 2020. K. Hansen Depo. Tr., 79:16-80:22; Ex. N, K. Hansen Depo. Ex. O.  During the conversation, Mr. Boyers told Mr. Qualizza that he was an unacceptable person and that U.S. Bank had been harming the deal at Mr. Boyers' direction.  In the years prior to this phone call, Mr. Boyers and Mr. Qualizza had a close relationship that involved Mr. Boyers repeatedly soliciting gifts from Developers.  Ex. O, S. Kramer Depo. Ex. 25.  In total, Mr. Boyers solicited and received more than $6,800 in gifts from Mr. Qualizza and Mr. Freeman from December 2015 to January 2019.  *Id.* The gifts demanded ranged from high-end concert tickets and luxury hotel accommodations.  *Id.* The gifts were tied directly to the deal: when he requested the U2 tickets, Mr. Boyers had a text exchange with U.S. Bank Senior Vice President Bill Bayer, wherein Mr. Bayer stated "For me it doesn't get

---

completion were not the fault of Developers.  S. Kramer Depo. Tr., 109:20-110:3; Ex. Q, S. Kramer Depo. Ex. 9; B. Shelton Depo. Tr., 55:14-56:23; Ex. R, B. Shelton Depo. Ex. F.

6

any better than [seeing U2 at Soldier Field and the Cardinals at Wrigley Field]. Better [g]et that hotel loan to Q done: )" Ex. P, K. Schmidt Depo. Ex. BB. As alleged, Mr. Boyers' solicitation of these gifts violates U.S. Bank's Code of Ethics. Ex. S (provisionally filed under seal). Eventually, Developers declined to continue to provide the requested gifts, and the relationship deteriorated.

Recognizing that U.S. Bank's treatment of them changed after these gifts stopped, Developers sent a letter to U.S. Bank's CEO and General Counsel on March 6, 2020. Ex. T, Ltr from R. Barnes to A. Cecere. Instead of acknowledging any ethics violation by Mr. Boyers, U.S. Bank transferred the rest of the Hotel deal to SAG after this letter, including the FHTC equity. Ex. U, J. Ryan Depo. Tr., 40:13-41:22.

After transfer, SAG continued to harm the partnership, with SAG officer John Ryan seeking to use every leverage available against Developers. J. Ryan Depo. Tr., 146:8-20. Mr. Ryan sought to leverage Developers at a time when U.S. Bank knew that it was impossible for the Hotel to perform due to COVID-19. Specifically, U.S. Bank employees and official documents stated it was impossible for Developers to meet the debt service coverage ratio (DSCR) in December 2020. S. Kramer Depo. Tr., 141:24-142:21; Ex. V, Nov. 23, 2020, Problem Credit Monitoring Report, p. 7 ("COVID . . . makes achieving a stable TTM DSCR > 1.15x near impossible . . ."). U.S. Bank also stated that Developers had delivered all required Q2 2020 reporting as of fall 2020, and had continued to send reporting documents through the end of 2020. J. Ryan Depo. Tr., 127:20-128:6; 133:19-135:5. Finally, U.S. Bank stated that Developers had made all required payments on the loan as of December 2020. J. Ryan Depo. Tr., 125:21-126:11. Even though Developers did everything possible to perform and performance was in fact impossible due to COVID and the bank's conduct, U.S. Bank began charging default interest in December 2020 and filed this action to enforce the personal guaranties against Michael Qualizza, Neil D. Freeman, and Tim Dixon.

At the same time U.S. Bank was committing this harm, *i.e.,* the height of the pandemic, hotel lenders that acted consistent with their duties offered borrowers flexibility and/or relief during the pandemic.  Ex. W, Expert Report of D. Lesser, p. 27.  Developers have retained Mr. Lesser to offer opinions concerning comparable hotels' performance in 2020 and 2021, as well as lenders' treatment of hotel owners during the Covid-19 pandemic.  In his report, Mr. Lesser states that he is "not aware of any lender who exercised its discretion to mature a loan on a hotel during 2020 or 2021 without the option to extend." *Id.*  Nor is he aware of any hotel loan "that was matured without extension when the loan was only in technical default for reporting, certification, or other non-payment requirements."  *Id.*   Mr. Lesser's testimony proves that Developers were treated differently, and U.S. Bank's own employees' testimony proves that U.S. Bank intentionally harmed its partner in this deal.  A jury must hear this evidence for the reasons stated below.

**II.    To be Enforceable, Jury Waivers Must Be Knowingly and Voluntarily Made, and Courts Indulge Every Reasonable Presumption Against Waiver**

The right to trial by jury is a fundamental, constitutional right.  *See, e.g.*, *Bank of America, N.A. v. JB Hanna, LLC*, 776 F.3d 841, 849 (8th Cir. 2014). In contrast, "[t]here is no constitutional right to a nonjury trial." *Brownlee v. Yellow Freight Sys., Inc.*, 921 F.2d 745, 749 (8th Cir. 1990). Ultimately, "[i]n disputes regarding jury waivers, courts 'indulge every reasonable presumption against waiver.'" *Smoky Hills Wind Project II, LLC v. Springfield*, No. 6:14-CV-03543-SRB, 2015 WL 12880502, at *1 (W.D. Mo. July 14, 2015) (quoting *Ind. Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.*, 195 F.3d 368, 374 (8th Cir. 1999)).

Both Missouri and federal courts recognize that, to overcome this presumption and establish a valid waiver of the right to a jury trial, the waiver must have been made knowingly and

8

voluntarily.[6] *See Malan Realty Inv'rs, Inc. v. Harris*, 953 S.W.2d 624, 627 (Mo. 1997); *Regions Equip. Fin. Corp. v. Blue Tee Corp.*, No. 4:16-CV-140-CEJ, 2016 WL 2643359, at *2 (E.D. Mo. May 10, 2016). As U.S. Bank acknowledges, the party "attempting to enforce the waiver"—here, U.S. Bank—"has the burden of proving the waiver is knowing and voluntary." *Regions Equip.*, 2016 WL 2643359, at *2. Those arguing for contractual jury waivers, must present evidence of the same, and where they do not, "courts often refuse to strike jury demands." *Miner v. Schrieber*, No. 4:19-CV-95-SPM, 2020 WL 3581617, at *4 (E.D. Mo. July 1, 2020). The Court in *Miner* cited several such cases[7] where the Eastern District of Missouri had denied motions to strike jury demands, on its way to denying a similar motion. *Id.* at *4-5. In perhaps the most analogous of those cases, considering the identities of the parties, U.S. Bank sued guarantors of a commercial loan, defended counterclaims against the same guarantors, and moved to strike a jury demand, but that motion was denied because the guarantors raised sufficient questions about the voluntariness of their waiver. *U.S. Bank Nat'l Ass'n v. Canny*, No. 4:10CV421 CDP, 2011 WL 226965, at *4 (E.D. Mo. Jan. 24, 2011).

In Missouri, courts will only uphold a contractual jury waiver if it was made by "clear, unambiguous, unmistakable, and conspicuous language." *Miner*, 2020 WL 3581617, at *3. In making this inquiry, federal courts consider whether:

---

[6] Courts within the Eighth Circuit have not resolved the question of whether Missouri or federal law determines the validity or scope of contractual jury waivers when a federal court sits in diversity jurisdiction. *See Miner v. Schrieber*, No. 4:19-CV-95-SPM, 2020 WL 3581617, at *2 (E.D. Mo. July 1, 2020) (citing *Smoky Hills* 2015 WL 12880502, at *1 (holding that federal law should be applied); *Main St. Bank v. Carlyle Van Lines, Inc.*, No. 08-0546-CV-W-DGK, 2009 WL 10672242, at *1 (W.D. Mo. Sept. 16, 2009) (holding that state law should be applied). As in *Miner*, the result is the same here under either state or federal law.

[7] *See Knight v. G4S Secure Sols. USA Inc.*, No. 4:18CV2089 RLW, 2019 WL 4246593, at *1 (E.D. Mo. Sept. 6, 2019); *OS33 v. CenturyLink Commc'ns, L.L.C.*, No. 4:17-CV-2603 CAS, 2018 WL 6064864, at *2 (E.D. Mo. Nov. 20, 2018); *Cyclonaire Holding Corp. v. Baker*, No. 4:16CV467, 2017 WL 3206894, at *11 (D. Neb. Apr. 11, 2017).

9

> (1) . . . the waiver provision is on a standardized form agreement or in a newly-drafted document; (2) . . . the waiver is in fine print or in large or bold print; (3) . . . the waiver is set off in a paragraph of its own; (4) . . . the provision is in a take-it-or-leave-it contract or in a negotiated contract; (5) the . . . waiver [is conspicuous] in comparison to the length of the contract; (6) . . . the waiving party was represented by counsel; (7) . . . the waiving party was a sophisticated business person aware of the consequences of the waiver; (8) . . . the parties were manifestly unequal in bargaining power; and (9) whether there was an opportunity to review all of the terms of the contract and whether the waiving party did so."

*Miner*, 2020 WL 3581617, at *3 (citing *Regions Equip.*, 2016 WL 2643359, at *2). Missouri law is less well-defined, but Missouri courts have considered the following factors: "negotiability of the contract terms, disparity in bargaining power between the parties, the business acumen of the party opposing the waiver, and the conspicuousness of the jury waiver provision." *Id.* (quoting *Malan Realty*, 953 S.W.2d at 627.

### III. Developers Did Not Knowingly and Voluntarily Waive Their Right to a Jury Trial

Under the nine factors articulated above (which are comprehensive and inclusive of factors in Missouri cases), U.S. Bank's Motion to Strike Developers' Jury Demand should be denied.

As a first matter, U.S. Bank offers as evidence only two statements as to the *Regions* factors: (1) that "The *final* documents evidencing The Last Hotel project are not form documents, but were the result of several months of extended negotiations between the parties;" Decl. of E. Jones, ¶ 4 (July 8, 2022), [ECF No. 65-1] (emphasis added); and (2) that Developers were represented by counsel. *Id.* This threadbare showing is insufficient to meet U.S. Bank's burden to demonstrate that jury waivers were signed knowingly and voluntarily. *See Miner*, No. 4:19-CV-95-SPM, 2020 WL 3581617, at *4 (collecting cases).

In contrast, Developers submit evidence that the waiver provisions referenced by U.S. Bank are on standardized agreements for guaranties, construction loans, and SHTC purchase

10

agreements, updated with the names of parties and limited features of The Last Hotel. *See* Ex. E, N. Freeman Decl. ¶ 9; Ex. F. T. Dixon Decl., ¶ 3. U.S. Bank enters into numerous transactions with these provisions, and it treats jury waivers therein as required. *Id.* While U.S. Bank argues the contracts were extensively negotiated, they identify no bilateral negotiation or revision of the boilerplate jury waiver provisions—the terms relevant to the motion to strike. Accordingly, the first and fourth *Regions* factors weigh heavily in favor of invalidating the jury waivers referenced by U.S. Bank.

The fifth, sixth, and ninth factors also weigh strongly in favor of concluding there was no knowing and voluntary jury waiver. With respect to the sixth factor, although Developers were represented by transactional counsel, their state and local incentives counsel, David Richardson, had a conflict of interest that materially limited his representation of Developers. Specifically, Richardson's firm Husch Blackwell served as transactional counsel for U.S. Bank in this deal, the entities which fraudulently misrepresented the SHTC certificate timeline. Due to their counsel's conflict, Developers were situated fundamentally differently than counseled parties in cases cited by U.S. Bank where contractual jury waivers have been enforced. Further, Developers could not possibly have had an opportunity to review all of the terms of the contract within their 5,000 pages, some of which continued to change in the leadup to closing. *See* Ex. E., N. Freeman Decl., ¶6; Ex. F., T. Dixon Decl. ¶4. Accordingly, factors five, six, and nine also weigh in favor of Developers.

With respect to factor seven, contrary to U.S. Bank's portrayal, Developers were not sophisticated in the context of this deal and were not aware of the significance of a jury demand. In their past deals with U.S. Bank, Developers primarily had the limited experience of investing federal New Markets Tax Credits (NMTC) in projects in which U.S. Bank also invested. Ex. E, N. Freeman Decl., ¶ 6. There is essentially no prospect of litigation between Developers and U.S.

11

Bank in that context. Ex. E, Freeman Decl., ¶ 7. Only in exceptional rare circumstances are NMTC investments recaptured in such a way that would lead to loss by an NMTC investor. *Id.* Further NMTC investors' contractual relationship is primarily with the developer, not with U.S. Bank. Accordingly, this experience provided no indication of the consequences of a jury waiver.

With respect to factor eight, the parties in this transaction are manifestly unequal in bargaining power.  In The Last Hotel deal, U.S. Bank served as equity partner, lender, NMTC investor, and SHTC purchaser.  U.S. Bank set the terms of these deals with respect to the amounts of investments and loans, the responsibilities of parties, scope of jury waivers, and related terms. *Id.*  This power differential is manifest in the closing documents which place all risk on Developers. U.S. Bank required Developers to sign payment and completion guaranties for construction, as well as recapture guaranties for the project's NMTC and HTC debt and equity, respectively (collectively the "Guaranties").  If the project failed for any reason, these Guaranties—all of which were demanded by U.S. Bank—ensured that U.S. Bank would not lose anything.

For all these reasons, Developers did not knowingly and voluntarily agree to any jury waivers, those provisions must not be enforced, and U.S. Bank's Motion to Strike Developers' Jury Demand should be denied.

## IV. The Alleged Waivers Pertaining to 1501 Washington Are Invalid

In entering into this deal, the Developers rely, in critical part, on the SHTC Purchase Agreement.  In addition to being unknowingly and involuntarily made, the jury trial waiver contained in the SHTC Purchase Agreement has been waived by U.S. Bank.  This provision is contained in the Dispute Resolution paragraph of this agreement, which specifies that:

> To the extent permitted by law, each party hereby irrevocably waives trial by jury in any action related to this agreement and agrees that <u>all disputes of any kind arising under or related to this agreement, including the issue of arbitration itself, shall be settled</u>

> <u>in a confidential manner by arbitration</u> . . . pursuant to the commercial arbitration rules of the American Arbitration Association.  <u>The arbitration procedure is the exclusive means for resolving disputes covered by this agreement</u>.  All of the parties to this agreement expressly waive any right to resolve any dispute of any kind arising under or related to this agreement through any other means, including by filing a lawsuit in a court of law.

Ex. X, SHTC Purchase Agreement, p. 11 (emphasis added).

In the fourteen months since Developers filed their Counterclaims, U.S. Bank has never moved to compel arbitration as provided for in this paragraph.  The entire benefit of private, confidential arbitration has been eliminated by eighteen months of public litigation.  Accordingly, U.S. Bank has waived its right to enforce the terms of this paragraph, which must be read together.

This waiver affects the entirety of the case at hand because Developers would not have executed the deal but for U.S. Bank's misrepresentations concerning the SHTC certificate timeline.  The deal simply did not make financial sense under the condition that the SHTC certificate would be delivered a year after placed-in-service.  Before June 2019, the interest rate on the SHTC bridge loan was 8% with an effective rate of 4.4%, considering that 45% of pre-completion interest expenses are refunded through SHTCs and FHTCs.  After June 2019, the interest rate on the same loan jumped to 15%.  Developers would not have executed the deal if they knew they would have to pay 15% interest on $10 million for a year or more.  Without these misrepresentations for which the right to a jury trial is preserved, none of the other damages and claims would have accrued.[8]

Additionally, judicial administration favors trying all Counterclaims in this matter by a jury.  *See Brownlee v. Yellow Freight Sys., Inc.*, 921 F.2d 745, 749 (8th Cir. 1990).  In *Brownlee*,

---

[8] Relatedly, the only other jury waiver pertaining to 1501 Washington, specifically the waiver contained within the Construction Loan Agreement, has a limited scope: it pertains to the "Loan and/or Loan Documents," [ECF 65-2, p. 69], defined as eighteen documents tightly connect to the loan. *Id.* at p. 96.  This definition does not include the Construction Contract.  Nor does it include the SHTC Purchase Agreement.  Accordingly, any claims of 1501 Washington pertaining to these two agreements are triable only by jury and not subject to any jury trial waiver.

13

the Eighth Circuit determined that where claims between some parties must be tried by a jury but claims between other parties may be tried by a judge or jury, then "[t]he better course is to try all common issues, with respect to [the separate parties], to the jury." *Id.* The Court in *Brownlee* affirmed the Eastern District of Missouri's denial of a motion to strike plaintiff's jury demand. The Court reasoned that submitting common issues of fact to a jury for one party but to the judge for another party "would be impractical and confusing, difficult to handle as a matter of judicial administration, and likely to produce feelings of incongruity and injustice among the parties." *Id.*

Given the interrelationship between all the contracts, the waiver of this provision affects all claims in the case. Holding bench trial for DFQ Management, Michael Qualizza, Neil D. Freeman, and Timothy Dixon—after a jury has made findings of fact concerning 1501 Washington's claims—would similarly risk inconsistent outcomes, impracticality, and feelings of incongruity and injustice. If, for example, a jury found that the CDC tortiously interfered with the construction contract between Paric and 1501 Washington (the "Construction Contract") by withholding the second FHTC installment while arbitration was pending, the Court sitting at a bench trial would still have to examine the same withheld funding with respect to DFQ Management's breach of contract claim. In such a circumstance, "the better course is to try all common issues . . . to the jury." *Id.* At a minimum, under the Seventh Amendment, the jury must resolve all claims related to the tax credits with those findings binding on any additional issues.

Additionally, and at the least, 1501 Washington should not be bound by other parties' jury waivers and should have its Counterclaims heard by a jury. Parties to a contractual jury waiver cannot waive non-signatories' Seventh Amendment right to a jury trial. *See, e.g., Selzer v. Dunkin' Donuts, Inc.*, No. CIV.A. 09-5484, 2014 WL 1340549, at *5 (E.D. Pa. Apr. 4, 2014). Further, by their own language, the jury waivers identified by U.S. Bank apply to only the parties to each

14

contract. They do not apply to 1501 Washington, especially considering that 1501 Washington's fraudulent misrepresentation and tortious interference claims are not even based in contract. Accordingly, at the least, 1501 Washington retains its Seventh Amendment right to trial by jury.

## V.     Conclusion

Because the jury waivers identified by U.S. Bank were present on reused, standardized agreements, presented as take-it-or-leave it contracts, that were not negotiated by the parties, and buried in the 5,000 pages of this transaction, Developers could not knowingly or voluntarily agree to the jury waivers. In fact, the vast majority of the factors articulated in *Regions* weigh in favor of denying U.S. Bank's Motion to Strike Developers' Jury Demand. U.S. Bank has not met its burden to offer evidence that the jury waivers were entered into knowingly and voluntarily. Applying "every reasonable presumption against waiver," *Lumbermens*, 195 F.3d at 374, requires the Seventh Amendment right to jury trial be preserved in this matter.

Independent of the *Regions* factors, U.S. Bank has waived the dispute resolution provision contained within the SHTC Purchase Agreement and therefore cannot seek to enforce that provision now. This waiver affects the entirety of the case at hand, because Developers would not have entered the deal but for U.S. Bank's misrepresentations concerning the SHTC certificate timeline. Additionally, judicial administration favors trying all Counterclaims in this matter by a jury. *See Brownlee v. Yellow Freight Sys., Inc.*, 921 F.2d 745, 749 (8th Cir. 1990).

For these reasons, we respectfully ask the court to deny U.S. Bank's Motion to Strike Developers' Trial Demand. We also request that the Court rule on U.S. Bank's Motion to Strike Developers' Jury Trial Demand when it rules on parties' motions for summary judgment, *see*, *e.g.*, *Miner*, 2020 WL 3581617, at *3 (considering evidence submitted upon motions for summary judgment), and in the interests of justice, we request a hearing on the same Motion.

Dated:  August 3, 2022

Respectfully submitted,

**DOWD BENNETT LLP**

By:  */s/ James F. Bennett*
James F. Bennett
Michelle D. Nasser
7733 Forsyth Blvd, Suite 1900
St. Louis, MO 63105
Phone: (314) 889-7300
Fax: (314) 863-2111
jbennett@dowdbennett.com
mnasser@dowdbennett.com

Attorney for Defendants Neil D. Freeman and Timothy Dixon and for Counterclaimants DFQ Management and 1501 Washington St. Louis, LLC.

CERTIFICATE OF SERVICE

       The undersigned hereby certifies that a true and exact copy of the foregoing has been served upon all parties and/or counsel listed below electronically through the Court's ECF system on this 3rd day of August, 2022.

Mike W. Bartolacci
Mark V. Bossi
Elizabeth A. Casale
One U.S. Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000 (Phone)
(314) 552-7000 (Fax)

Attorneys for Plaintiff U.S. Bank
National Association and
Counterclaim Defendant U.S.
Bancorp Community Development
Corporation

                                                        */s/ James F. Bennett*