**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION,  )<br>)<br>Plaintiff,  )<br>)<br>vs.  )<br>)<br>MICHAEL S. QUALIZZA, *et al.*,  )<br>)<br>Defendants.  ) | Case No. 4:21-cv-120-MTS |

**MEMORANDUM AND ORDER**

The matter before the Court is a Motion to Strike Counterclaimants' Jury Demand, Doc. [64]. For the reasons that follow, the Court denies the Motion.

**I.   BACKGROUND**

U.S. Bank, National Association ("U.S. Bank") originally filed an action against Michael Qualizza, Neil Freeman, and Timothy Dixon (collectively, the "Guarantors") for repayment of a construction loan made in connection with the construction of The Last Hotel (the "Transaction"). In response, the Guarantors, DFQ Management, LLC ("DFQ"), and 1501 Washington St. Louis, LLC ("1501 Washington") (collectively, "Counterclaimants") filed ten counterclaims against U.S. Bank and U.S. Bancorp Community Development Corporation ("CDC").[1]  Doc. [12]. Counterclaimants demanded a jury trial.  *Id.* at 1; *see also* Fed. R. Civ. P. 38(b).

CDC and U.S. Bank (collectively, "the Banks") filed a Motion to Strike Counterclaimant's jury demand arguing Counterclaimants previously had knowingly and voluntarily waived their

---

[1] The ten counterclaims are for: civil conspiracy (Count I), fraudulent misrepresentation (Count II), negligent misrepresentation (Count III), breach of master tenant operating agreement, guaranty, loan agreement, disbursing agreement and other transaction documents (Count IV), breach of good faith and fair dealing (Count V), declaratory judgment (Count VI), tortious interference (Count VII), prima facie tort (Count VIII), fraudulent misrepresentation (Count IX), and negligent misrepresentation (Count X).

1

right to a jury trial. In support of their Motion, the Banks point to jury trial waivers found in six agreements. *See* Docs. [65-2]–[65-7]. U.S. Bank seeks to enforce the jury trial waivers against the Guarantors pursuant to the Payment Guaranty Agreement and the Completion Guaranty Agreement ("Guaranty Agreements"). *See* Doc. [65-4] at 6; Doc. [65-5] at 8. U.S. Bank seeks to enforce jury trial waivers against 1501 Washington pursuant to the Construction Loan Agreement ("Loan Agreement") and the Promissory Note. *See* Doc. [65-2] at 63; Doc. [65-3] at 2–3. CDC seeks to enforce a jury trial waiver against 1501 Washington pursuant to the Tax Credit Purchase Agreement ("TCP Agreement"). Doc. [65-7] at 10. CDC seeks to enforce a jury trial waiver against DFQ pursuant to the Master Tenant Operating Agreement. Doc. [65-6] at 83. Counterclaimants argue they did not waive their right to a trial by jury and, even if they did, their claims are not within the scope of the waiver. *See* Docs. [73] & [76].

## II.     LEGAL STANDARD

The Seventh Amendment to the United States Constitution preserves "[i]n Suits at common law, . . . the right of trial by jury." U.S. Const. amend. VII. Federal Rule of Civil Procedure 38 recognizes this right. Fed. R. Civ. P. 38(a) ("The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate."). It is well established, however, that the right to a jury trial can be waived via contract. *Bank of Am., N.A. v. JB Hanna, LLC*, 766 F.3d 841, 849 (8th Cir. 2014); *see also Nw. Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 373 F.2d 136, 142 (8th Cir. 1967). The U.S. Court of Appeals for the Eighth Circuit has not decided whether federal law or state law governs the enforceability of jury trial waivers, and other Circuits are not in lockstep with each other. *See IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 994 (7th Cir. 2008) (holding that state law governs the validity of a bench-trial agreement in a case under diversity jurisdiction and

declining to follow a Second Circuit case and Sixth Circuit case "[t]o the extent that [they] hold otherwise").  The parties agree, however, that a "knowing and voluntary" standard applies regardless of whether the Court applies Missouri or federal law.[2]  *See Malan Realty Invs., Inc. v. Harris*, 953 S.W.2d 624, 627 (Mo. banc. 1997) (explaining that a trial court must determine whether a jury trial waiver "was knowingly and voluntarily or intelligently made"); *Popular Leasing USA, Inc. v. Nat'l Restoration Sys., Inc.*, 4:04-cv-01629, 2005 WL 2033423, at *2 (E.D. Mo. Aug. 23, 2005) ("Under federal law, the right to a jury trial may be waived by contract, provided the waiver is knowingly and voluntarily made.").

"The determination of whether a waiver was knowing and voluntary is largely fact-driven." *Popular Leasing USA, Inc. v. Turner Const. Co.*, 4:05-cv-248-CEJ, 2005 WL 2874741, at *1 (E.D. Mo. Oct. 31, 2005).  Thus, to determine whether a waiver was knowing and voluntary, courts consider several factors: (1) whether the waiver provision is on a standardized form agreement or in a newly-drafted document; (2) whether the waiver is in fine print or in large or bold print; (3) whether the waiver is set off in a paragraph of its own; (4) whether the provision is in a take-it-or-leave-it contract or in a negotiated contract; (5) the conspicuousness of the waiver in comparison to the length of the contract; (6) whether the waiving party was represented by counsel; (7) whether the waiving party was a sophisticated business person aware of the consequences of the waiver; (8) whether the parties were manifestly unequal in bargaining power; and (9) whether there was an opportunity to review all of the terms of the contract and whether the waiving party did so. *Regions Equip. Fin. Corp. v. Blue Tee Corp.*, 4:16-cv-140-CEJ, 2016 WL 2643359, at *2 (E.D. Mo. May 10, 2016); *Miner v. Schrieber*, 4:19-cv-95-SPM, 2020 WL 3581617, at *3 (E.D. Mo. July 1, 2020).  "[B]ecause the right to a jury trial is fundamental, 'courts must indulge every

---

[2] *See* Doc. [73] at 9 n.6; Doc. [76] at 7 n.2; Doc. [65] at 8–9, n.6.

reasonable presumption against waiver.'" *Ind. Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.*, 195 F.3d 368, 374 (8th Cir. 1999) (quoting *Burns v. Lawther*, 53 F.3d 1237, 1240 (11th Cir. 1995)); *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937).

### III. DISCUSSION

1. **The Banks Did Not Meet Their Burden to Show Knowing and Voluntary Waivers**

The Banks seem to accept that the party "attempting to enforce the waiver"—here, U.S. Bank and CDC—"has the burden of proving the waiver is knowing and voluntary." *Regions Equip.*, 2016 WL 2643359, at *2; *accord* Doc. [65] 8–9. In support of their Motion, the Banks provide six agreements and one affidavit. *See* Docs. [65-1]–[65-7]. The Banks primary argument for striking the jury demand is the conspicuous nature of the jury waiver provision in the six agreements (Factors Two and Three).[3] The affidavit the Banks provided essentially serves as a records custodian. The only substantive evidence the affidavit provides is that "[t]he final documents evidencing The Last Hotel project are not form documents, but were the result of several months of extended negotiations between the parties." *See* Doc. [65-1] ¶ 4. But the parties clearly dispute whether the agreements were standardized form documents. *See* Doc. [73-5] ¶ 9; Doc. [73-6] ¶ 3; Doc. [76-1] ¶ 9. And while there may have been extensive negotiations related to the Transaction, the Banks do not identify evidence of negotiation or revision of the agreements claimed to be standardized or boilerplate provisions, such as the jury waiver. The Court notes the Transaction involved a closing file of hundreds of agreements and approximately 5000 pages. Doc. [73-5] ¶ 9. The Banks present no evidence to show that the six agreements here, as opposed to any of the other hundreds of agreements, were actually negotiated or non-standardized

---

[3] While the Court tends to agree with the Banks on this point, the Court does not similarly find that the waiver in the TCP Agreement is conspicuous. *See* Doc. [65-7] at 10.

4

documents. To the contrary, there is compelling evidence the Banks' agreements have "set terms" not up for negotiation, Doc. [73-5] ¶ 11; Doc. [73-6] ¶ 5; Doc. [76-1] ¶ 11, and that the jury trial waiver was non-negotiable, Doc. [73-5] ¶ 13; Doc. [73-6] ¶ 7; Doc. [76-1] ¶ 13.

As such, the only evidence the Banks present is the contractual provisions themselves.[4] *See* Docs. [65-2]–[65-7]. The Court concludes that these documents, standing alone, do not suffice to meet the burden of striking the jury demand. *See Miner*, 2020 WL 3581617, at *2; *Cyclonaire Holding Corp. v. Baker*, 4:16-cv-467, 2017 WL 3206894, at *11 (D. Neb. Apr. 11, 2017) (denying motion to strike where "the only information before the court is the contractual provision itself"); *see also Knight v. G4S Secure Sols. USA Inc.*, 4:18-cv-2089-RLW, 2019 WL 4246593, at *1 (E.D. Mo. Sept. 6, 2019) (denying motion to strike where jury waiver provision was conspicuous but a "more fully developed fact record" was needed to determine the other factors); *U.S. Bank Nat'l Ass'n v. Canny*, 4:10-cv-421-CDP, 2011 WL 226965, at *4 (E.D. Mo. Jan. 24, 2011) (denying motion to strike where "documents indicate[d] that the guarantors knowingly waived their right to a jury trial, [but] the guarantors have raised questions regarding the circumstances under which the waivers were signed"). The Banks' failure to present other evidence resonates even more in this case because there has been extensive written discovery and depositions, including the depositions of some of the Counterclaimants. Unlike many of the preceding cases, where litigation was still in an early stage, here, the Banks had more than sufficient time to gather and present the evidence needed to meet their burden. *See Knight*, 2019 WL 4246593, at *1 ("The Court believes that whether [the] execution of the waiver of the right to jury was knowing and voluntary cannot be determined at this time and requires additional information."); *see also Cyclonaire*, 2017 WL 3206894, at *11; *Canny*, 2011 WL 226965, at *4.

---

[4] For Factors Six, Seven, Eight, and Nine the Banks provide only conclusory allegations in their briefing that those factors are met. *See* Doc. [65] at 12.

Counterclaimants put forth a plethora of evidence in support of several of the factors. Counterclaimants presented compelling evidence regarding standardized form agreements, a take-it-or-leave-it contract, lack of negotiation, unequal bargaining power, representation of adequate counsel, and the hundreds of agreements exchanged between the parties in conjunction with the six agreements at issue here. At the very least, Counterclaimants have raised sufficient questions about the voluntariness of their waiver. The Banks presented no evidence to counter these points, despite their burden. *See Regions Equip.*, 2016 WL 2643359, at *2. Because the Banks have not presented sufficient evidence to meet their burden of showing Counterclaimants knowingly and voluntarily waived their right to a jury trial, and Counterclaimants presented evidence that, at the very least, raises questions about the voluntariness of their waiver, the Court, "indulg[ing] every reasonable presumption against waiver," *Indiana Lumbermens*, 195 F.3d at 374, will deny the Bank's Motion to Strike Counterclaimants' jury demand.

2. **The Jury Waivers Do Not Apply to All of the Counterclaims**

Even *if* the Court concluded that Counterclaimants knowingly and voluntarily waived their right to a jury trial, several of the counterclaims are outside the scope of the waiver and the Court would submit all counterclaims to trial by jury.[5]

Counts IX and X are claims for fraudulent and negligent misrepresentation regarding a loan Counterclaimants obtained from Octagon Credit Partners LP ("Octagon"), a non-party. Doc. [12] ¶¶ 305–332. Counterclaimants allege they obtained this high-interest loan specifically because the Banks would not provide additional financing for the Transaction. In other words, the loan subject

---

[5] The Court finds the Banks' one-size-fits all approach here is unavailing given that the six agreements are between different parties and concern different obligations, rights, remedies, and waivers for each Counterclaimant. Further, a "waiver by one party cannot bind other parties," and the applicability of a waiver depends on in what capacity the agreement was signed. *JB Hanna*, 766 F.3d at 849.

6

of Counts IX and X specifically do *not* involve any loan or agreement to which the Banks are part, and instead, involve a loan and agreement between Counterclaimants and non-party Octagon. Nothing in the language of the jury trial waivers here support extending the waiver to associated loans. *JB Hanna*, 766 F.3d at 849 (concluding jury trial waivers in two guaranty agreements did not extend to associated loans where the party waived its jury-trial right "with respect to any legal proceeding arising out of or relating to Agreement or any Transaction contemplated hereby"). And, notably, the misrepresentations alleged in Counts IX and X *preceded* the contracts that contain the jury waivers now at issue. Therefore, Counts IX and X would proceed to a trial by jury.

Counts II and III are claims for fraudulent and negligent misrepresentation based on a December 12, 2019, forbearance letter and the settling of claims with non-party Paric Co. ("Paric"). Doc. [12] ¶¶ 198–226. Counterclaimants "seek recission" of the 2019 forbearance letter and damages from "surrender[ing] their legal rights by settling the Paric litigation," which was worth more than $1,000,000. *Id.* ¶¶ 211, 213, 291. On the record before the Court, the settling of claims with a non-party and a 2019 forbearance letter do not concern any of the six Transaction agreements or the waivers therein. Therefore, Counts II and III would proceed to a trial by jury.

Count VII is for tortious interference with a Construction Contract between 1501 Washington and Paric. Doc. [65-2] at 9; *see also* Doc. [12] ¶ 66 ("On December 29, 2017, 1501 Washington executed a Guaranteed Maximum Price Agreement (the "Construction Contract") with Paric Corporation ("Paric") under which Paric would serve as the General Contractor for the Last Hotel Construction."). Counterclaimants allege the Banks "intentionally caused or induced" Paric to breach the Construction Contract by interfering in at least four different ways. *See* Doc. [12] ¶¶ 285–88. Thus, the contract that is the subject of Count VII does *not* involve any loan or

7

agreement of which the Banks are part.

Nonetheless, U.S. Bank argues the Loan Agreement's broad jury trial waiver[6] applies here because U.S. Bank's "alleged interference with [1501 Washington's] construction contract with Paric only arise because U.S. Bank is the lender under the [] Loan Agreement."  Doc. [85] at 13.  Just as an action does not "arise under" federal law where only the defense is based on federal law, see, *e.g.*, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393–99 (1987), the waiver here does not apply to an action *unrelated* to the "Loan" or "Loan Documents" just because the Banks may use their obligations under the Loan Agreement (which contains a waiver) as a defense.  Moreover, the Court rejects the Bank's argument that the "broad" waiver brings Count VII within its scope.  While 1501 Washington waived its jury-trial right for "any action relating to the Loan and/or the Loan Documents," Doc. [65-2] at 63, two terms that encompass broad definitions,[7] that waiver is still limited in scope to "Loans" and "Loan Documents."  The Court does not read those defined terms so broadly as to cover any other agreement 1501 Washington enters with respect to the Transaction.  To be sure, the context of the Loan Agreement shows the waiver applies to other agreements related to the Loan, not to the Transaction.

In circumstances like the action here, where some claims are subject to jury waiver provisions and other claims are not, the Eighth Circuit has allowed district courts to essentially "nullify" the jury waiver provisions and hold a jury trial on all claims due to overlapping interpretation and application.  *See, e.g.*, *JB Hanna*, 766 F.3d at 850.  Given that half of the counterclaims are not within the scope of the waiver, and because there is substantial overlap

---

[6] Pursuant to the Loan Agreement, 1501 Washington waived its jury-trial right for "any action relating to the Loan and/or the Loan Documents."  Doc. [65-2] at 63.

[7] "Loan Documents" is defined as "all documents now or hereafter entered into which evidence, secure and/or govern the Loan and/or any of the Obligations, including but not limited to those documents listed on Schedule 2 to this Agreement, *or any other documents, agreements or instruments entered into by Borrower . . . with respect to the Loan*."  Doc. [65-2] at 12 (emphasis added).  "Loan" is defined as "the loan of the proceeds of the Note by [U.S.] Bank to [1501 Washington] in Advances to be made pursuant to the terms of this Agreement."  *Id.*

between all the counterclaims, the Court would submit all of the counterclaims to the jury.

    3. **An Additional Procedural Question**

As some of the cases cited herein show, federal courts do, at times, strike jury demands based on contractual waivers. As a procedural matter, however, this Court questions whether federal district courts may strike a jury demand, properly filed under Federal Rule of Civil Procedure 38, on the basis that the parties have a contract wherein they waived the right to a jury trial. *See* Scott Dodson, *Party Subordinance in Federal Litigation*, 83 Geo. Wash. L. Rev. 1, 6–7 (theorizing that "parties' attempts to alter otherwise applicable procedures—such as through ex ante jury-trial waivers—are wholly unenforceable absent some legal authorization for judicial enforcement"). Rule 38 provides that the "right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate," Fed. R. Civ. P. 38(a), and it specifically provides for how a "party waives a jury trial"—by failing to properly serve and file a demand, *id.* at 38(d). Rule 39 makes clear that once a party has filed a jury demand in compliance with Rule 38, the "trial on all issues so demanded must be by jury unless" (1) the parties or their attorneys file a stipulation, or stipulate on the record, to a nonjury trial or (2) the court finds that "on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(1), (2).

The first subsection does not apply here. And the second subsection seems to be about determining whether a federal right to a jury trial exists for the issue generally (*i.e.*, determining if the Seventh Amendment or a federal statute grants the right to a jury trial on the issues). *See Kampa v. White Consol. Indus., Inc.*, 115 F.3d 585, 587 (8th Cir. 1997) (noting federal law controls the right to a jury trial in federal court, even in cases where a state statute or state constitution would preclude a jury trial in state court); *see also U.S. Sec. & Exch. Comm'n v. Jensen*, 835 F.3d

9

1100, 1107 (9th Cir. 2016) ("As long as there is a federal right to a jury trial, 'trial on all issues so demanded must be by jury unless . . . the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record.'" (quoting Fed. R. Civ. P. 39(a))); *see also, e.g.*, *Navarro v. Procter & Gamble Co.*, 529 F. Supp. 3d 742, 751 (S.D. Ohio 2021) (finding the Copyright Act "does not create a statutory right to a jury trial on the issue of . . . damages"); *Boles v. United States*, 3 F. Supp. 3d 491, 514 (M.D.N.C. 2014) (striking jury demand after concluding there "is no right to a jury trial in an action under the FTCA"). Thus, even when a contractual agreement waives a party's right to a jury trial, it does not mean that there is no federal right to a jury trial on the issue. *Cf. In re Borowiak IGA Foodliner, Inc.*, 879 F.3d 848, 849 (8th Cir. 2018) (*per curiam*) (directing district court to reinstate jury trial because, under Rule 39(a), there was no dispute that "there [wa]s a federal right to a jury trial on the issues," even though the parties' agreement contained jury waiver clauses). While a contractual jury waiver "may bind the parties under penalty of a lawsuit for breach of contract," parties' contracts "do not change the law governing the substantive lawsuit." Dodson, *supra*, at 23–24; *accord id.* at 39–40. And even if Rule 39(a)(2) allows a district court to conclude there is no federal right to a jury trial on an issue based on a party's contractual waiver, it does not seem to follow that the Rule *requires* a court to strike a jury demand otherwise proper under the Rules. *Brownlee v. Yellow Freight Sys., Inc.*, 921 F.2d 745, 749 (8th Cir. 1990) ("There is no constitutional right to a nonjury trial."). That said, since the parties did not raise or brief this issue, and because the Court declines to strike the jury demand for other reasons, the Court need not decide the Motion on this basis.

## CONCLUSION

The Court finds that the Banks have not met their burden of showing Counterclaimants knowingly and voluntarily waived their right to a jury trial. Even if the waivers were enforceable,

10

several of the counterclaims are not within the scope of the waiver and the Court could submit all the counterclaims to the jury.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Strike Counterclaimants' Jury Demand, Doc. [64]. is **DENIED**.

Dated this 30th day of May 2023.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE