IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| U.S. BANK, National Association, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:21-cv-00120-NAB |
| MICHAEL QUALIZZA, NEIL D. FREEMAN, TIMOTHY DIXON, | ) |
| Defendants and Counterclaimants, | ) |
| and | ) |
| DFQ MANAGEMENT LLC, and 1501 WASHINGTON ST. LOUIS, LLC, | ) |
| Counterclaimants, | ) |
| v. | ) |
| U.S. BANCORP COMMUNITY DEVELOPMENT CORPORATION, and U.S. BANK, NATIONAL ASSOCIATION, | ) |
| Counterclaim Defendants. | ) |

**DECLARATION OF TIMOTHY DIXON
IN SUPPORT OF COUNTERCLAIMANTS' MOTIONS FOR SUMMARY JUDGMENT**

I, Timothy Dixon, being duly sworn, and based on my personal knowledge, state:

1. My name is Timothy Dixon. I am over the age of 18 and am competent to make this affidavit.

**I. The Parties Entered Into a Partnership to Develop The Last Hotel.**

2.  In or around 2015, I decided to serve as a developer for the hotel redevelopment of the International Shoe Company building at 1501 Washington Avenue, St. Louis, Missouri, to be known as The Last Hotel (the "Transaction").

3.  Through the Transaction, several development entities were created including 1501 Washington St. Louis, LLC, ("1501 Washington") and DFQ Management LLC ("DFQ").

4.  1501 Washington and DFQ were entities through which three persons—Michael S. Qualizza, Neil D. Freeman, and I ("Individual Defendants," collectively with 1501 Washington and DFQ "Developers")—developed The Last Hotel.

5.  1501 Washington and DFQ were created solely for development of The Last Hotel and had no corporate existence before December 2017.

6.  1501 Washington contracted for the construction of The Last Hotel with Paric Corporation ("Paric").

7.  1501 Washington took out loans for the construction of The Last Hotel, including ███████████████████████████████████████████████████████████████████████████████████████████████████████████. See Ex. 1, CohnReznick Dep. Ex. 4, p. 5.

**II. Prior to December 29, 2017, I Had No Experience with Missouri State Historic Tax Credits and Relied on U.S. Bank's Expertise Concerning Missouri State Historic Tax Credits.**

8.  On and before December 29, 2017, *i.e.* prior to the Transaction, I had never participated in a deal involving Missouri state historic tax credits (SHTCs).

9.  On and before December 29, 2017, *i.e.* prior to the Transaction, I had no knowledge of when other projects were receiving Missouri SHTCs.

2

10. On and before December 29, 2017, *i.e.* prior to the Transaction, I had no means of determining, through ordinary diligence, the actual timeframe on which SHTCs were being delivered for any given project, as such information is not public.

11. On and before December 29, 2017, *i.e.* prior to the Transaction, I understood U.S. Bank to be the partner in the Transaction that had exclusive knowledge of the timing of Missouri SHTC delivery.

12. Based on my experience in the business of historic redevelopment, I understand that flexibility, commitment, and accurate information are essential to successful historic renovation including the renovation at The Last Hotel.

13. I relied on U.S. Bank providing the same level of flexibility, commitment, and accurate information it had provided in the past, when I agreed to renovate the International Shoe Company building.

14. Based on my experience in the business of historic redevelopment, I understand that, in historic redevelopment deals, while renovation costs are incurred and must be paid during construction, historic tax credits (both federal and state) are not approved until the historic renovation is completed.

15. Because historic renovation costs are incurred before FHTCs and SHTCs are approved, to fund construction for The Last Hotel, Developers needed to obtain a loan to "bridge" the period between when construction costs must be paid and when SHTCs are received.

16. To obtain a bridge loan with appropriate terms, namely the interest rate and maturity date, Developers needed to know exactly when we could expect SHTCs to be paid.

**III. U.S. Bank Misrepresented that State Historic Tax Credits Could and Would be Received Within About Three Months of The Last Hotel Being Placed in Service.**

17. Before it entered into the Transaction, U.S. Bank required that financial projections (the "Projections") be produced to U.S. Bank so that it could obtain tax credit benefits from The Last Hotel.

18. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See, e.g.*, Exs. 2-8, CohnReznick Dep. Exs. 1 (identifying members of the Working Group), 13, 20, 23, 27, 32, 36, and 39.

19. Each of the drafts of the Projections I received indicated that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See, e.g.*, Exs. 9-14, CohnReznick Dep. Exs. 4, 14, 18, 24, 28, 37.

20. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See, e.g.*, Exs. 15-20, CohnReznick Dep. Exs. 15, 16, 21, 25, 29, 35.

21. Among the many changes requested and communications they made, U.S. Bank's officers and agents never disclosed to me that receipt of the SHTCs would take at least a year, assuming everything went right.

22. If U.S. Bank had shared with me that SHTCs would be received, in a best-case scenario, a year after The Last Hotel was placed in service, I would not have entered into the Transaction.

23. If U.S. Bank had shared with me that SHTCs would be received, in a best-case scenario, a year after The Last Hotel was placed in service, I would not have signed the guaranty on which U.S. Bank has sued.

24. On and before December 29, 2017, I had no knowledge that SHTC delivery would take, in the best scenario, a year or more from the time the building was placed in service.

25. On and before December 29, 2017, I relied on the presumed truth of the statements in the Projections that SHTC funding would be received by May of 2019, about three months after The Last Hotel was projected to be placed in service.

Executed on: 5-30-2024

Timothy Dixon