# EXHIBIT D

FILED
3/5/2024 4:02 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH11088
Calendar, 9
26686137

FILED DATE: 3/5/2024 4:02 PM   2022CH11088

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| MICHAEL S. QUALIZZA, individually as the sole manager of RMZ-1501 ST. LOUIS, LLC and as the co-manager of DFQ MANAGEMENT LLC, and derivatively on behalf of RMZ-1501 ST. LOUIS, LLC, DFQ MANAGEMENT LLC, and 1501 WASHINGTON ST. LOUIS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NEIL DAVID FREEMAN,<br><br>Defendant. | Case No. 2022 CH 11088 |

## PLAINTIFF'S EMERGENCY MOTION FOR THE APPOINTMENT OF A RECEIVER FOR DFQ AND THE LAST HOTEL

Plaintiff, MICHAEL S. QUALIZZA ("Qualizza"), individually as the sole manager of RMZ-1501 ST. LOUIS, LLC and as the co-manager of DFQ MANAGEMENT LLC, and derivatively on behalf of RMZ-1501 ST. LOUIS, LLC, DFQ MANAGEMENT LLC ("DFQ") and 1501 WASHINGTON ST. LOUIS, LLC ("1501 Washington"), by and through his undersigned attorney, moves this Court, on an emergency basis, for the Appointment of a Receiver for DFQ and the Last Hotel. ("Motion"). In support of the Motion, Qualizza states as follows:

I. **Introduction And Summary Of The Argument**

By this Motion, Qualizza seeks the appointment of a receiver for DFQ and the Last Hotel, a high-end, boutique hotel with 142 guest rooms located in St. Louis, Missouri (the "Last Hotel" or "Hotel"), The two (2) co-managers of DFQ, Qualizza and Freeman, through 1501 Washington, operate the Last

1

FILED DATE: 3/5/2024 4:02 PM 2022CH11088

Hotel. As 1501 Washington is managed by DFQ, it requires unanimity among Qualizza and Freeman to make decisions on behalf of the Last Hotel. The Operating Agreement for DFQ, a Delaware limited liability company, does not address the appointment of a receiver.

As set forth in great detail in the affidavit of Qualizza attached hereto as Exhibit "A" and made a part hereof, the repeated gross mismanagement of the Hotel by Freeman, as well the abdication by Freeman of his duties and responsibilities as a co-manager of DFQ, has recently resulted in the entry of judgment against DFQ, Qualizza and Freeman by the Hotel's mezzanine lender in the amount of $13,328,973, leading to the current insolvency of the Hotel. Given the acts of gross mismanagement and waste by Freeman as well as the dissension and deadlock that has existed between Freeman and Qualizza over the last few years, as set forth in the Third Amended Complaint (at Count IV), the only solution to maintain the viability of the Hotel is to appoint a receiver to consummate the sale of the Last Hotel for the highest and best price.

There is a current bona-fide, arms-length offer on the table for the purchase of the Last Hotel for $29,000,000 ("$29MM Offer"). In his capacity as the co-manager of DFQ, Freeman has blocked the sale for no good reason. A receiver appointed by this Court would be able to consummate the sale unhindered by Freeman and the Hotel would likely survive.

If a receiver is not appointed by this Court, the Hotel will be forced to close its doors, its employees will lose their jobs without any form of severance pay, the investors/members of the Hotel will lose their entire investment and

2

the creditors of the Hotel will likely be unable to recover their investments. A Court-appointed receiver, on the other hand, will be able to consummate the sale of the Last Hotel to the current purchaser of the Hotel for the $29MM Offer. The Motion should be granted.

## II. Facts Requiring The Appointment Of A Receiver For DFQ And The Last Hotel.

The relationship between Freeman and Qualizza has deteriorated over the last couple of years such that they are involved in a number of legal battles involving DFQ, Master Tenant and 1501 Washington (collectively, the Jointly-Owned Entities") and are no longer able to make decisions together, including, a path to the liquidation and sale of the Last Hotel, an event of utmost and urgent importance. (Affidavit ("Aff.") of Qualizza ("Q.") at ¶ 19).

By way of example, on September 2022, without consulting Qualizza and receiving his authorization as is required under the Operating Agreement for DFQ, Freeman initiated a lawsuit in the Circuit Court of the City of St. Louis, Twenty-Second Judicial Circuit, State of Missouri, in the case styled *ARQ-1501 St. Louis, LLC and Neil Freeman v. DFQ Management LLC, et al., Cause No. 2222-CC09498*, where he sought the appointment of a receiver for the Last Hotel. (the "St. Louis Lawsuit"). (Aff. of Q. at ¶ 20).

In the St. Louis Lawsuit, Freeman claimed that the appointment of a receiver for the Hotel would make it "more attractive to a buyer." (Aff. of Q. at ¶ 21). The appointment of a receiver for the Last Hotel that was sought publicly (in the St. Louis, Missouri Market) by Freeman in the St. Louis Lawsuit in 2022, was completely unwarranted and unnecessary <u>at the time</u> and

FILED DATE: 3/5/2024 4:02 PM 2022CH11088

seriously impaired the continued viability of the Hotel in the eyes of a potential buyer as well as the community, including customers and prospective customers of the Hotel, and resulted in a significant loss to its revenue stream and, therefore, its fair market value. (Aff. of Q. at ¶ 22).

The pendency of the St. Louis Lawsuit was picked up by the local press and was made known throughout the St. Louis, Missouri community and otherwise available on the internet to anyone, located anywhere. (Aff. of Q. at ¶ 23). Freeman initiated the St. Louis Lawsuit for the sole purpose of causing a reduction in the fair market value of the Hotel and to harm the Hotel and its investors, including Qualizza. (Aff. of Q. at ¶ 24).

There was nothing about the appointment, made public, of a receiver for the Last Hotel, as sought by Freeman in the St. Louis Lawsuit, <u>at that time</u>, that would have made it "more attractive" to a buyer as Freeman contended. (Aff. of Q. at ¶ 41). Instead, the public threat of the appointment of a receiver at the time of the initiation of the St. Louis Lawsuit, caused the community, including customers and prospective customers of the Last Hotel, to refrain from booking events, weddings, conferences, parties and rooms at the Hotel. This caused significant monetary damage to, and the insolvency of, the Hotel such that the appointment of a receiver for the Hotel is now required imminently. (Aff. of Q. at ¶ 42).

Qualizza, as one of the managers of DFQ, defended the St. Louis Lawsuit. By an "Order and Judgment" dated February 22, 2023, the St. Louis Court dismissed the St. Louis Lawsuit on the ground that, under the Operating Agreement for DFQ, it was brought in the improper forum; the proper forum

being either the United States District Court for the Northern District of Illinois, or the state court for the County of Cook, Illinois. (the "February 22, 2023 Order and Judgment"). (Aff. of Q. at ¶¶ 25-26).

In April, 2021, the two (2) managers of DFQ, Freeman and Qualizza, agreed that the sale of the Last Hotel to a third-party in a good faith, bona-fide, arms-length transaction was necessary in order to achieve the highest and best use of the asset and to preserve the equity of the investors in the Hotel, including the investments of Qualizza and Freeman, and to otherwise avoid a default on the Hotel's debt and the resulting closing of the doors to the Last Hotel. (Aff. of Q. at ¶ 31). While they originally received an offer to buy the Hotel for $34,500,000 (the "$34.5MM Offer"), due to the refusal on the part of Freeman to agree to extend the due diligence period, the $34.5MM Offer was withdrawn by the buyer. (Aff. of Q. at ¶ 33).

After many inquiries, on or about September 25, 2023, the parties received another good faith, bona-fide, arms-length offer in writing from a third-party to purchase the Last Hotel for twenty-nine million dollars ($29,000,000). (the "$29MM Offer"). (Aff. of Q. at ¶ 34). The $29MM Offer is a good faith, bona-fide, arms-length offer for the purchase and sale of the Last Hotel. (Aff. of Q. at ¶ 36). Rather than agree to move forward with the sale of the Last Hotel for the $29MM Offer, Freeman has, for many months, failed and refused to agree to the sale of the Last Hotel for the sale price of $29MM. (Aff. of Q. at ¶¶ 37-38).

Freeman seeks to harm the Hotel and its investors, including Qualizza, by refusing to move forward with the purchase and sale of the Hotel for the

5

$29MM Offer made by the bona-fide, good faith, arms-length purchaser waiting in the wings to close on the purchase and sale of the Hotel. (Aff. of Q. at ¶¶ 36-40).

In addition, on May 1, 2023, and May 11, 2023, 2023, Freeman sought and obtained Court orders that precluded Qualizza from any form of direct communication with Freeman. These orders make it impracticable and/or impossible for Freeman to continue to act as a co-manager of DFQ and the co-managers are hopelessly deadlocked in the management of DFQ and the Last Hotel. (Aff. of Q. at ¶ 44). While the Orders of this Court permit Qualizza to communicate with Freeman only through his counsel, because of the ethical rules applicable to attorneys licensed to practice law in the State of Illinois, counsel must communicate with Freeman through his attorney John R. Perkaus. (Aff. of Q. at ¶ 45). John R. Perkaus is generally non-responsive. (Aff. of Q. at ¶ 46).

On or about December 12, 2023, the Charlottesville Circuit Court, Commonwealth of Virginia, in Case Nos. 5400CL23000658-00 and 540CL23000657-00, entered an order confessing judgment in favor of the Hotel's mezzanine lender, namely Octagon Credit Partners LP, and against, among others, DFQ, Freeman and Qualizza in the amount of $13,328,973. This judgment against DFQ has rendered DFQ insolvent and unable to pay all of its debts in the ordinary course of business. (Aff. of Q. at ¶ 49).

More recently, on February 2, 2024, in the lawsuit styled *Hyatt Franchising, L.L.C. v. Last Hotel Master Tenant LLC, 1501 Washington St. Louis, LLC, Michael S. Qualizza and Neil D. Freeman*, Case No. 2023 L 006177, (the

6

FILED DATE: 3/5/2024 4:02 PM 2022CH11088

"Hyatt Lawsuit") Freeman has failed and refused to respond to Qualizza's attempts to reach agreement on the retention of counsel to defend jointly-owned entities, namely, Master Tenant and 1501 Washington Street, resulting in the entry of a default judgment against them in an amount in excess of $200,000. (Aff. of Q. at ¶ 47).

The gross mismanagement of the Hotel and the waste of its assets by Freeman and the failure on the part of Freeman to move forward with the $29MM Offer to buy the Last Hotel will result, imminently, in the closing of the Hotel. (Aff. of Q. at ¶ 50). Once the Hotel is closed, it will no longer have a value as a going concern and will likely be auctioned off by the lenders to the highest bidder or demolished entirely and turned into a parking lot. This will result in the complete loss of equity in the value of those holding, directly or indirectly, a financial interest in the Last Hotel and will likely result in significant additional personal liability to Freeman and Qualizza, as personal guarantors of the debts of the Hotel. (Aff. of Q. at ¶ 51).

The Last Hotel is currently insolvent which will impact, negatively, its ability to continue to conduct business as a going concern. The only solution to this is the appointment by this Court of a receiver who can take immediate and complete control of the Last Hotel and consummate a sale of the Hotel for the $29MM Offer while it is still operating as a going concern. (Aff. of Q. at ¶¶ 52-53). Once the Hotel closes its doors it will become substantially less valuable and, perhaps, no longer saleable as a hotel and will likely be demolished and turned into a parking lot. (Aff. of Q. at ¶ 54). In addition, when the doors to the Hotel are closed, the current employees of the Last

7

Hotel will lose their jobs and due to the insolvency of the Hotel, will not receive any severance pay whatsoever. (Aff. of Q. at ¶ 55).

On the other hand, the appointment of a receiver, will allow for a prompt sale of the Last Hotel, the return of investments to the creditors and investors in the Hotel as well as the likely preservation of the jobs of its current employees. (Aff. of Q. at ¶¶ 48-57).

### III. <u>**The Law**</u>

Under both Delaware and Illinois law, the Court has the inherent power as a court of equity to grant such remedies as would be just, whether or not such remedies are expressly provided for by statute or not. *See, e.g., Lichens Co. v. Standard Commercial Tobacco Co.,* 40 A.2d 447, 451 (Del. Ch. 1944) (describing the appointment of a receiver *pendente lite* as "one of the oldest remedies in equity"); *Citicorp Savings of Ill., F.A. v. Occhipinti,* 136 Ill. App. 3d 835, 839-840 (2d Dist. 1985) ( "the burden is upon the applicant for a receiver to present facts by his verified bill, petition, *or evidence* showing the necessity for such an appointment."); *People ex rel. Scott v. Silverstein,* 86 Ill. App. 3d 605, 610-11 (1st Dist. 1980).

A court may utilize its equitable powers to appoint a receiver "when fraud and gross mismanagement by corporate officers, causing real imminent danger of great loss, clearly appears, and cannot be otherwise prevented." *Drob v. Nat'l Mem'l Park,* 41 A.2d 589, 597 (Del. Ch. 1945).

In *Bagdonas v. Liberty Land Investment Co.,* 309 Ill. 103, 110, 140 N.E. 49 (1923), the Illinois Supreme Court held:

8

FILED DATE: 3/5/2024 4:02 PM 2022CH11088

"Application for the appointment of a receiver is addressed to the sound legal discretion of the court. It is a high and extraordinary remedy. The power is not arbitrary and should be exercised with caution and only where the court is satisfied there is imminent danger of loss if it is not exercised. The general rule is that the applicant must show, first, that he has a clear right to the property itself or has some lien upon it, or that the property constitutes a special fund to which he has a right to resort for the satisfaction of his claim; and second, that the possession of the property by the defendant was obtained by fraud, or that the property itself, or the income arising from it, is in danger of loss from neglect, waste, misconduct or insolvency."

8 *Del. C.* § 291 provides as follows:

"Whenever a corporation shall be insolvent, the Court of Chancery, on the application of any creditor or stockholder thereof, may, at any time, appoint 1 or more persons to be receivers of and for the corporation, to take charge of its assets, estate, effects, business and affairs, and to collect the outstanding debts, claims, and property due and belonging to the corporation, with power to prosecute and defend, in the name of the corporation or otherwise, all claims or suits, to appoint an agent or agents under them, and to do all other acts which might be done by the corporation and which may be necessary or proper. The powers of the receivers shall be such and shall continue so long as the Court shall deem necessary.

IV. **Argument**

   A. **Due To The Gross Mismanagement And Waste Of Freeman And The Dissension And Deadlock Of The Co-Managers of DFQ, The Only Viable Solution For The Hotel Is The Appointment Of A Receiver.**

Aggrieved members of a limited liability company have the right to seek the appointment of a receiver from this Court to manage and protect its assets. Illinois Courts have the authority under both the laws of Delaware and Illinois to appoint a receiver when there are conditions of waste, serious or gross mismanagement, dissension, deadlock and/or insolvency in play such that it is impracticable or impossible to carry on the business of the entity and to preserve its assets pending the outcome of a dispute. (See Law *supra* at pp. 8-9 herein).

In the instant case, Freeman and Qualizza have been unable, as co-managers of DFQ, to work together to operate the Last Hotel. Literally, when Qualizza "goes right," Freeman "goes left." Freeman's actions of gross mismanagement of DFQ and the waste of the assets of the Last Hotel, have led to its current insolvency and almost certain imminent demise.

As set forth in the Affidavit of Qualizza (Exhibit "A" hereto), Freeman has, over a period of years, acted in such a fashion as to significantly damage the value of the Last Hotel by refusing to make responsible decisions regarding the proper management of the business of the Hotel. In addition to generally ignoring and abdicating his duties and responsibilities as a manager, as set forth herein, Freeman unilaterally sought, publicly, the appointment of a receiver for the Hotel in the wrong (and local) forum,

10

claiming that the appointment of a receiver would make the hotel "more attractive" to a buyer. (Aff. of Q. at ¶ 21). This attempt to appoint a receiver by Freeman was ultimately unsuccessful, but has now damaged the Hotel in the eyes of the community, including the customers and prospective customers of the Hotel, <u>to the point that now a receiver is required.</u> (Aff. of Q. at ¶¶ 22 & 42).

Perhaps the most egregious example of Freeman's gross mismanagement of the Hotel is that fact that he has repeatedly refused to cooperate and communicating with Qualizza in consummating the sale of the Last Hotel to a third-party in a pending, good faith, bona-fide, arms-length transaction for $29,000,000. (Aff. of Q. at ¶¶ 34-40). A transaction of this nature and amount would allow the Hotel to pay its creditors and its investors as well as to maintain the jobs of the current employees of the Hotel. (Aff. of Q. at ¶¶ 55-57).

The offer for the purchase of the Last Hotel was originally $34,500,000, but the buyer lowered its offer. This lowered price for the Hotel was due only to the fact that Freeman would not give the buyer a reasonable and short extension of the due diligence period, which has now resulted in a loss of $5,500,000 to the Last Hotel. (Aff. of Q. at ¶¶ 33-34).

This conduct on the part of Freeman has effectively stymied the pending sale of the Hotel and, if left unchecked, will result in the imminent closing of the doors of the Last Hotel and its further insolvency. With the Hotel closed, any equity in the assets of the business will be lost by DFQ, 1501 Washington, their investors and creditors. (Aff. of Q. at ¶¶ 51-57).

More recently, on February 2, 2024, in the lawsuit styled *Hyatt Franchising, L.L.C. v. Last Hotel Master Tenant LLC, 1501 Washington St. Louis, LLC, Michael S. Qualizza and Neil D. Freeman*, Case No. 2023 L 006177, Freeman failed and refused to respond to Qualizza's attempts to reach agreement on the retention of counsel to defend two (2) jointly-owned entities, namely, Master Tenant and 1501 Washington, resulting in the entry of a default judgment against them in an amount in excess of $200,000. (Aff. of Q. at ¶ 47).

Moreover, Freeman, as a manager of DFQ, has failed and refused to communicate with Qualizza in making decisions necessary to the conduct of the business of the Last Hotel. This has effectively made it impracticable and/or impossible to carry-on the business of DFQ, 1501 Washington and the Hotel. (Aff. of Q. at ¶¶ 19-47).

Because of the gross mismanagement of Freeman and the waste of the assets of the Hotel, and the dissension and deadlock set forth herein, the only practicable solution is for the Court to appoint a receiver for the Hotel. The receiver would be charged with consummating a sale of the Hotel at the earliest possible date at the highest and best sale price which now stands at $29,000,000. Once the Hotel is closed, it will no longer have a value as a going concern and will likely be auctioned off by the lenders to the highest bidder or demolished entirely and turned into a parking lot. This will result in the complete loss of equity in the value of those holding a financial interest, directly or indirectly, in the Last Hotel and will likely result in significant

additional personal liability to Freeman and Qualizza, as personal guarantors of the debts of the Hotel. (Aff. of Q. at ¶ 51).

The only solution for the continued viability of the Hotel is the appointment by this Court of a receiver who can take immediate and complete control of the Last Hotel and consummate a sale of the same for the $29MM Offer to the buyer standing by while it is still operating as a going concern. In the Motion, Qualizza has met his burden of showing, by overwhelming evidence, that there is an imminent need for the appointment of a receiver for the Last Hotel.

### B. As It Is Now Insolvent, Without The Immediate Appointment Of A Receiver, The Last Hotel Will Be Forced To Close Its Doors Forever.

The Last Hotel is currently insolvent and is unable to pay all of its bills as they become due in the ordinary course of business. (Aff. of Q. at ¶ 52). This financial conundrum was further exacerbated by the fact that on or about December 12, 2023, in the Charlottesville Circuit Court, Commonwealth of Virginia, Case No. 5400CL23000658-00 and 540CL23000657-00, the Hotel's mezzanine lender, Octagon Credit Partners LP, was successful in confessing judgment against, among others, DFQ, Freeman and Qualizza in the amount of $13,328,973. (Aff. of Q. at ¶¶ 49-51). As a result of its financial situation, the Last Hotel has had to close its restaurant and rooftop bar and will close its doors altogether imminently.

The only solution for the continued viability of the Hotel is the appointment by this Court of a receiver who can take immediate and complete control of the Last Hotel and consummate a sale of the same for

FILED DATE: 3/5/2024 4:02 PM 2022CH11088

the $29MM Offer while it is still operating as a going concern. (Aff. of Q. at ¶ 53). The receiver appointed by the Court would manage the business and affairs of the Last Hotel such that a sale may be achieved for the $29MM Offer. (Aff. of Q. at ¶ 56). This would return the Hotel to being solvent and the jobs of the Hotel's current employees would likely be saved.

In the absence of the appointment of a receiver, as set forth herein, the Last Hotel will fail and all of its investors and creditors will lose most if not all of their equity and investments in the same and its employees will lose their jobs without any severance pay whatsoever. (Aff. of Q. at ¶ 57). This result can be avoided by the Court's appointment of a receiver for the Hotel.

The Motion is well-founded and, respectfully, should be granted. Qualizza has met his burden of showing, by admissible evidence, the imminent need for the appointment of a receiver for the Last Hotel. To the extent that an evidentiary hearing is required by the Court, Qualizza stands ready and able to attend the same at the Court's earliest availability.

Respectfully submitted,

MICHAEL S. QUALIZZA, individually as the
sole manager of RMZ-1501 ST. LOUIS, LLC and
as the co-manager of DFQ MANAGEMENT LLC,
and derivatively on behalf of RMZ-1501
ST. LOUIS, LLC, DFQ MANAGEMENT LLC,
and 1501 WASHINGTON ST. LOUIS,
LLC,

By: /s/ Daniel J. Voelker
His Attorney

Daniel J. Voelker, Esq.
**Voelker Litigation Group**
33 N. Dearborn Street
Suite 1000

14

FILED DATE: 3/5/2024 4:02 PM 2022CH11088

Chicago, Illinois 60602
312.870.5430
312.505.4841
dvoelker@voelkerlitigationgroup.com
Firm No. 48085

Dated: March 5, 2024

## CERTIFICATE OF SERVICE

I, Daniel J. Voelker, an attorney, hereby certify that on March 5, 2024, I filed the above **Plaintiff's Emergency Motion For The Appointment Of A Receiver For DFQ And The Last Hotel** with the Clerk of the Circuit Court of Cook County, Illinois, via the Odyssey e-Filing system and served the same on all counsel of record via the same.

*/s/ Daniel J. Voelker*