IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| U.S. BANK, National Association, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:21-cv-00120-MTS |
| MICHAEL QUALIZZA, NEIL D. FREEMAN, TIMOTHY DIXON, | ) |
| Defendants and Counterclaimants, | ) |
| and | ) |
| DFQ MANAGEMENT LLC, and 1501 WASHINGTON ST. LOUIS, LLC, | ) |
| Counterclaimants, | ) |
| v. | ) |
| U.S. BANCORP COMMUNITY DEVELOPMENT CORPORATION, and U.S. BANK, NATIONAL ASSOCIATION, | ) |
| Counterclaim Defendants. | ) |

**DECLARATION OF NEIL D. FREEMAN
IN OPPOSITION TO U.S. BANK'S MOTIONS FOR SUMMARY JUDGMENT**

I, Neil D. Freeman, being duly sworn, and based on my personal knowledge, state:

1. My name is Neil D. Freeman. I am over the age of 18 and am competent to make this affidavit.

**I. The Parties Entered Into a Partnership to Develop The Last Hotel and For Which DFQ Management LLC and 1501 Washington St. Louis, LLC Were Created.**

2. In 2002, I co-founded the Urban Development Fund, LLC (UDF), a community development entity focused on investing New Markets Tax Credits (NMTC) in low-income communities across the country.

3. Since its founding, UDF has received and invested over $620 million of NMTC development in much-needed economic development projects and community assets in low-income communities.

4. From UDF's creation, UDF brought NMTC investment opportunities to U.S. Bancorp Community Development Corporation ("the CDC"), including the CDC's second and third ever NMTC deals.

5. In or around 2015, I was recruited to serve as a developer for the hotel redevelopment of the International Shoe Company building at 1501 Washington Avenue, St. Louis, Missouri, to be known as The Last Hotel (the "transaction").

6. 1501 Washington St. Louis, LLC, ("1501 Washington") and DFQ Management LLC ("DFQ") were entities through which three persons—Michael S. Qualizza, Timothy Dixon, and I ("Guarantors," collectively with 1501 Washington and DFQ "Developers")—developed The Last Hotel.

7. I created ARQ-1501 St. Louis, LLC solely for the purpose of this transaction.

8. I co-created DFQ solely for the purpose of this transaction.[1]

---

[1] In my declaration dated May 30, 2024, I mistakenly stated that 1501 Washington and DFQ were created through the transaction in December 2017. Through my review of the closing file since May 30, 2024, I understand that both of these limited liability companies were created before December 2017, although their applicable operating agreements (for 1501 Washington an Amended and Restated Operating Agreement) were dated December 29, 2017, and executed with the transaction on December 29, 2017.

9. The applicable operating agreements for 1501 Washington and DFQ were dated for the day the transaction was closed: December 29, 2017. Ex. 1 Operating Agreement of DFQ Management; Ex. 2 Operating Agreement of 1501 Washington.

10. 1501 Washington and DFQ developed The Last Hotel through a partnership with U.S. Bank National Association (the "Bank") and the CDC (collectively "U.S. Bank").

11. U.S. Bank participated in this transaction as a lender, NMTC investor, purchaser of state historic tax credits (SHTCs), and partner contributing equity through federal historic tax credits (FHTCs). Ex. 3 Projections [at 6], (USBCDC00048484).

12. U.S. Bank's FHTC equity was provided through a limited liability company formed by the CDC and DFQ Management, the Last Hotel Master Tenant LLC (the "Master Tenant"). *Id.*

13. The Master Tenant was created for the purpose of allowing U.S. Bank to claim FHTCs on its tax returns. Ex. 4 Tax Reasonableness Opinion, p. 30 (quoting I.R.S. Rev. Proc. 2014-12 ("A Partnership can be structured as either a Developer Partnership or a Master Tenant Partnership.")).

14. The partnership between Developers and U.S. Bank—and the transaction itself—is memorialized by a closing file of at least 267 documents, about 5,000 pages, and at least 16 agreements. Ex. 5 Closing File Table of Contents.

15. The closing file that was prepared for this transaction and executed on December 29, 2017, includes the guaranties (the "Guaranties") upon which U.S. Bank sued me, Michael Qualizza, and Timothy Dixon (the "Guarantors"). *Id.*

16. In addition to the Guaranties, the closing file that was prepared for this transaction and executed on December 29, 2017, includes at least fifteen other agreements

signed with and relating to the same subject matter as the Guaranties and the Construction Loan Agreement by which U.S. Bank lent $12 million for the redevelopment of The Last Hotel.

17. Leading up to and during negotiation of this transaction, U.S. Bank's CEO Zachary Boyers repeatedly solicited gifts from me and Mr. Qualizza, including two four-night stays at the Roosevelt Hotel in New Orlans over New Year's Eve.

18. I did not provide any gifts to Zachary Boyers after January of 2019.

19. Based on my experience in the business of historic redevelopment, I understand that flexibility, commitment, and accurate information are essential to successful historic renovation including the renovation at The Last Hotel.

20. I relied on U.S. Bank providing the same level of flexibility, commitment, and accurate information it had provided in the past when I agreed to renovate the International Shoe Company building.

## II. U.S. Bank Misrepresented that State Historic Tax Credits Could and Would be Received Within Three Months of The Last Hotel Being Placed in Service.

21. Before it entered into the transaction, U.S. Bank required that financial projections (the "Projections") be produced to U.S. Bank so that it could obtain tax credit benefits from The Last Hotel.

22. As one of the Developers of The Last Hotel, I was a member of a working group including at least twelve officers and agents of U.S. Bank (the "Working Group") that received, from August through December 2017, at least seven drafts of the Projections requested by U.S. Bank. *See*, *e.g.*, Exs. 6-13 CohnReznick Dep. Exs. 1 (identifying members of the Working Group), 13, 20, 23, 27, 32, 36, and 39.

23. Each of the drafts of the Projections I received indicated that SHTCs for The Last Hotel would be received within three months of The Last Hotel being placed in service. *See*, *e.g.*, Exs. 14-19, CohnReznick Dep. Exs. 4, 14, 18, 24, 28, 37.

24. As one of the Developers of The Last Hotel and a member of the Working Group, I received, from August through December 2017, at least seven emails from U.S. Bank's counsel and agent Ruth Sparrow and officer Frances Doherty commenting on more than a hundred inaccuracies in the Projections *See*, *e.g.*, Exs. 20-25, CohnReznick Dep. Exs. 15, 16, 21, 25, 29, 35.

25. Among the many changes requested and communications they made, U.S. Bank's officers and agents never disclosed to me that receipt of the SHTCs would take at least a year, assuming everything went right.

26. U.S. Bank's officers and agents never disclosed to me that receipt, as of August to December 2017, other projects were receiving Missouri SHTCs, in a best case scenario, twelve months after being placed in service.

### III. U.S. Bank Refused to Fund FHTCs and SHTCs During a Dispute Between Developers and Construction Contractor Paric Corporation.

27. 1501 Washington contracted for the construction of The Last Hotel with Paric Corporation ("Paric").

28. Throughout construction of The Last Hotel, construction auditor Capital Consultants prepared reports documenting construction progress by Paric and its subcontractors.

29. In 2018 and 2019, U.S. Bank withheld from Developers reports created by construction auditor Capital Consultants.

30. Throughout 2018 and the spring of 2019, construction of The Last Hotel suffered delays and cost overruns under Paric.

5

31. The construction delays and cost overruns identified in Paragraph 30 resulted in a dispute between Developers and Paric.

32. U.S. Bank refused to provide any SHTC or FHTC funding while the Paric dispute was pending.

33. When it entered into the transaction, U.S. Bank agreed to contribute equity by virtue of federal historic tax credits (FHTC). Ex. 26, Master Tenant Operating Agreement § 5.01.

34. U.S. Bank was to provide its FHTC equity in three installments. *Id.*

35. A certificate for U.S. Bank's second installment of FHTC equity (the "contribution certificate") was provided when U.S. Bank was willing to fund the second installment. Ex. 27, Contribution Certificate.

36. The contribution certificate identified in Paragraph 35 certifies that certain representations and warranties "remain true and correct . . . as of the date for the second installment." (emphasis added) *Id.*

37. Based on my experience in the tax credit industry, I understand that without confirmation from U.S. Bank that it would be making the equity contribution, it would be premature for DFQ Management to prepare the contribution certificate identified in Paragraph 35.

### IV. **U.S. Bank Demanded Developers Sign a Forbearance Letter Without Providing an Opportunity to Cure Alleged Defaults.**

38. On or around June 19, 2019, U.S. Bank sent a letter purporting to give notice of an alleged default for 1501 Washington. Ex. 28, June 2019 Notice.

39. The June 2019 Notice contained one alleged default, that the note was allegedly out of balance. *Id.*

40. Developers brought the loan into balance in a timely manner after the June 19, 2019, letter.

41. Between June 19, 2019, and November of 2019, other than the alleged default in the June 2019 Notice identified in Paragraph 38, U.S. Bank did not provide notice of any alleged default for The Last Hotel.

42. In November of 2019, U.S. Bank again threatened Developers that if they did not settle the dispute with Paric, then U.S. Bank would enforce default provisions of the Construction Loan Agreement.

43. In November of 2019, U.S. Bank through its agent Steve Kramer further threatened that it would fail to fund FHTCs and SHTCs unless Developers settled the dispute with Paric.

44. In December of 2019, U.S. Bank demanded that Developers sign a Forbearance Letter containing releases for U.S. Bank or U.S. Bank would enforce default provisions of the Construction Loan Agreement.

45. Although 1501 Washington settled with Paric, U.S. Bank was not willing to make the final disbursement in December of 2019.

46. Paric was not willing to provide an unconditional final lien waiver until it was paid through the final disbursement.

**V.　For No Legitimate Purpose, U.S. Bank Refused to Consent to, or Even Discuss, a Lower Interest Bridge Loan from Midland States Bank.**

47. The development of the Hotel was funded in part by $10 million in Missouri SHTCs, which U.S. Bank agreed to purchase. Ex. 29 SHTC Purchase Agreement.

48. Based on my experience in the business of historic redevelopment, I understand that, in historic redevelopment deals, while renovation costs are incurred and must be paid during construction, historic tax credits (both federal and state) are not approved until the historic renovation is completed.

49. Because historic renovation costs are incurred before FHTCs and SHTCs are approved, to fund construction for The Last Hotel, Developers needed to obtain a loan to "bridge" the period between when construction costs must be paid and when SHTCs are received.

50. Developers obtained a $17 million bridge loan from Octagon Credit Partners LP ("Octagon") (the "Octagon Bridge Loan") for development of The Last Hotel. Ex. 3 Projections at p. 6.

51. As a partner in the transaction who had access to the closing documents, U.S. Bank knew the amount, rate, and terms of the Octagon bridge loan agreement and promissory note, both of which were closing documents. Ex. 5 Closing File Table of Contents.

52. Beginning in July 2019, Developers started incurring 15% interest on the $17 million Octagon Bridge Loan. Ex. 30 Bridge Loan Statement.

53. In fall of 2019, to reduce our cost of borrowing while waiting for SHTCs and FHTCs, Developers sought new, lower-interest funding sources. *See* Ex. 31, R. Walker email to N. Freeman.

54. In fall of 2019, I had a lunch with U.S. Bank officers Laura Vowell and Steve Kramer, during which Ms. Vowell and Mr. Kramer told me that, if Developers settled with Paric, U.S. Bank would promptly fund FHTCs.

55. During the same lunch, Ms. Vowell and Mr. Kramer told me that U.S. Bank could either purchase SHTCs promptly after 1501 Washington settled with Paric or U.S. Bank could replace the 15% interest Octagon Bridge Loan with a lower interest rate bridge loan.

56. In November 2019, in a separate conversation over the phone U.S. Bank officer Stephen Kramer told me and Mr. Qualizza that U.S. Bank would promptly fund historic tax credits if Developers settled with Paric.

57. In December 2019 and January of 2020, as a result of Ms. Vowell's and Mr. Kramer's representations that U.S. Bank would promptly fund SHTCs and FHTCs and/or provide a bridge loan for SHTCs, Developers' search for new, lower-interest funding sources was delayed while we waited for U.S. Bank's funding.

58. By March of 2020, it became clear to me that U.S. Bank had reneged on Ms. Vowell's and Mr. Kramer's representations that U.S. Bank would promptly fund SHTCs and FHTCs and/or provide a bridge loan for SHTCs, and instead, U.S. Bank was attempting to declare default.

59. By March of 2020, Developers had began final negotiations with Midland States Bank to obtain a lower interest bridge loan for the hotel. Ex. 32 March 9, 2020, email from R. Walker to N. Freeman.

60. Based on email correspondence with Midland States Bank, I understood that U.S. Bank's participation and approval was important to timely execution of the Midland States Bank bridge loan documents. *Id*.

9

61. U.S. Bank had previously agreed that its payment of SHTC funds would be sent to Octagon. Ex. 33 Pay Direction Ltr.

62. Per Midland States Bank's bridge loan, money from U.S. Bank's purchase of SHTCs would need to be sent to Midland States Bank instead of Octagon.

63. U.S. Bank never gave approval of the Midland States Bank Bridge Loan.

## VI. U.S. Bank Failed to Pay the Final Disbursement from the Construction Loan of $252,000.

64. On January 13, 2020, 1501 Washington obtained final, unconditional lien waivers from Paric Corporation. Ex. 34 Final, Unconditional Lien Waiver.

65. In May of 2020, Developers requested the final $252,000 disbursement from the Construction Loan between 1501 Washington and U.S. Bank.

66. U.S. Bank refused to fund the final $252,000 disbursement.

67. The $252,000 final disbursement, if paid, would have allowed Developers to pay down a portion of the $17 million bridge loan from Octagon Credit Partners LP accruing 15% interest.

## VII. Developers Did Everything They Could to Perform Under the transaction Documents, But Performance Was Impossible Due to the COVID-19 Pandemic.

68. In March of 2020, the COVID-19 pandemic caused a precipitous and historic decline in the hotel industry of a scale I had never seen in my experience in the hotel industry.

69. At U.S. Bank's requirement, the Developers kept The Last Hotel open throughout the pandemic.

70. Despite the challenges posed by COVID-19, the Developers took action to keep The Last Hotel open and make it profitable, including for the purpose of satisfying the DSCR covenant and to enable refinancing.

71. In July 2020, I requested in writing an extension of time to meet U.S. Bank's demands concerning the Construction Loan, when U.S. Bank threatened to charge default interest and mature the loan. Ex. 35, Jul. 7, 2020, N. Freeman email to J. Ryan.

72. In December 2020, I requested in writing an extension of the maturity date pursuant to the Construction Loan Agreement. Ex. 36, Dec. 16, 2020, N. Freeman email to J. Ryan.

73. Instead of granting that extension, on December 29, 2020, U.S. Bank sent a notice of maturity for the Construction Loan. Ex. 37, Notice of Loan Maturity.

74. None of U.S. Bank's pre-suit notices to Developers, whether the December 29, 2020, Notice of Maturity, *Id.*, nor any other pre-suit notices from U.S. Bank described COVID-19 as a material adverse change (or even mentioned COVID-19).

75. Developers were never given an opportunity to cure any alleged default based on COVID-19, as the Construction Loan Agreement requires of U.S. Bank. Ex. 38 Construction Loan Agreement § 8.1(d).

Executed on: 7-12-24

Neil D. Freeman