**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00120-MTS |
| | ) | |
| MICHAEL  QUALIZZA,  NEIL  D.  FREEMAN, TIMOTHY DIXON, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN OPPOSITION TO JUDGMENT DEBTOR**
**QUALIZZA'S  APPLICATION FOR TEMPORARY RESTRAINING ORDER AND**
<u>**INJUNCTIVE RELIEF TO PROTECT EXEMPT PROPERTY**</u>

Judgment debtor Michael Qualizza ("Qualizza") owes judgment creditor U.S. Bank National Association ("USB") nearly $1,000,000 pursuant to a judgment to which he consented. Rather than allow garnishment proceedings to play out in the ordinary course, Qualizza has once again burdened this Court and USB with a needless, procedurally and substantively improper motion. Qualizza's Application for Temporary Restraining Order and Injunctive Relief to Protect Exempt Property (the "Motion"), seeks to enjoin further garnishment proceedings pending resolution of his and co-judgment debtor Neil Freeman's motions to quash. But Qualizza has no underlying claim upon which he could obtain injunctive relief. He asserts that the garnishment freeze of his *financial accounts* is certain to cause *irreparable harm*. The Missouri Supreme Court Rules already guard against the harm of which Qualizza feigns he is at risk. And, citing to unsigned agreements and dealings that do not involve USB, Qualizza attempts to cast doubt on his remaining liability under a consent judgment for which he is jointly and severally liable. For these reasons, and as explained further below, USB respectfully requests that the Court deny the Motion.

**Background**

On October 15, 2025, the Court entered a Judgment by Consent with Stay of Execution (the "Consent Judgment") in favor of USB and against Qualizza, Neil D. Freeman, and Timothy Dixon. ECF No. 257. Under the Consent Judgment, "each of the claims asserted by the Counterclaimants"—which included Qualizza—"[were] withdrawn and dismissed with prejudice." *Id.*

Pursuant to the Consent Judgment, the Court entered judgment against Qualizza and his co-defendants *jointly and severally* in the sum of $14,250,000 (the "Judgment Amount"). *Id.* The Consent Judgment includes a "Stay Termination Date" of February 28, 2026. *Id.* At that time, the stay of execution imposed by the Consent Judgment terminated and the unpaid portion of the Judgment Amount started accruing interest at a rate of nine percent per annum. *Id.* Also, upon the Stay Termination Date, USB became free to enforce the Consent Judgment "against any or all of the Defendants by any means available under governing law." *Id.* The Consent Judgment makes no reference to, nor is the extent of Qualizza's personal liability connected to, a sale of the Last Hotel. *Id.*

On April 29, 2026, USB filed a Partial Satisfaction of Judgment (the "Partial Satisfaction"). ECF No. 259. The Partial Satisfaction provides that the Judgment Amount has been partially satisfied in the amount of $13,299,435.43 (the "Recovery Amount"). *Id.* After application of the Recovery Amount to interest and principal, the principal balance of the Judgment Amount remaining unsatisfied as of March 7, 2026 was $971,646.76. *Id.* No party objected to the Partial Satisfaction.

On May 29, 2026, USB filed applications for writs of garnishment against Qualizza's accounts at four institutions: JPMorgan Chase Bank, N.A. [ECF No. 273], Capital One Financial Corporation [ECF No. 274], Raymond James & Associates, Inc. [ECF No. 275], and T. Rowe

Price Associates, Inc. [ECF No. 276]. Each application attached a standard set of forms: a Summons to Garnishee, a Writ of Garnishment, Interrogatories Directed to Garnishee, a Certificate of Service, and a U.S. Marshal Form USM-285. The writs were returnable on June 25, 2026, and responses to interrogatories were due ten days thereafter.

On June 18, 2024, Qualizza filed a motion seeking to, among other things, quash the garnishment proceedings (the "Motion to Quash"). *See* ECF No. 286. He filed that motion *pro se* despite the fact that he is represented by at least two attorneys.[1] The Motion to Quash advanced a number of theories that could be grouped together as follows: First, Qualizza argued that the Court should stay garnishment proceedings until nondebtor ownership and exemption issues are resolved. *See id.* ¶¶ 26–30. Second, Qualizza argued in his Motion to Quash that USB should be required to reestablish the remaining portion of the Judgment Amount. *Id.* ¶¶ 58, 65–61. Third, Qualizza argued that the Court lacks jurisdiction over T. Rowe Price because it is identified as having an out-of-state address. *Id.* ¶¶ 49–54. USB filed a response to the Motion to Quash on June 30, 2026. ECF No. 297.

---

[1] In response to the Motion to Quash, USB argued that the Court need not entertain a pro se motion from a represented party. The same rule applies here. Qualizza incorrectly argues that because he has filed a "Pro Se Limited Appearance," USB's position that he is not entitled to hybrid *pro se* representation is somehow resolved. Mot. at 3 & 13.

Qualizza's "Pro Se Limited Appearance" changes nothing. Although Mr. Barnes has represented to counsel that he no longer represents Mr. Qualizza, he is still entered in this case. And a separate attorney has recently emailed the undersigned and purported  to "represent Mr. Qualizza" concerning this dispute. A litigant has no right to simultaneously proceed pro se and with the benefit of counsel. *See Carter v. Hassell*, No. 4:05CV2259, 2008 WL 2439846, at *2 (E.D. Mo. June 16, 2008). Thus, a "district court has 'no obligation to entertain pro se motions filed by a represented party.'" *Prosser v. Nagaldinne*, No. 4:08CV44, 2008 WL 11410032, at *1 (E.D. Mo. Dec. 8, 2008) (quotation omitted). There's no exception to this rule for a litigant who has filed an appearance on his own behalf.

This Motion advances many of the same arguments as the Motion to Quash. Those arguments, as relevant to this Court's inquiry on a motion for injunctive relief, are summarized below.

### I.    *Qualizza ignores safeguards provided by the Missouri Supreme Court Rules and feigns risk of irreparable harm for entirely quantifiable alleged damages.*

Qualizza argues that he is at risk of imminent irreparable harm because the bank accounts subject to writs of garnishment contain exempt property and property belonging to third parties. Mot. at 13–15. Qualizza argues, without support, that continued garnishment proceedings "will force" liquidation of his tax-advantaged retirement accounts and that USB continues to threaten turnover or liquidation of his wife's separate property. *Id.* at 14. According to Qualizza, "[n]o monetary remedy can restore these losses." *Id.*

Despite Qualizza's hyperbolic rhetoric, Qualizza has  not even filed a claim of exemption. *See* Mo. Sup. Ct. R.  90.035 (permitting judgment debtors to file a claim of exemption to protect exempt property). Nor has Mrs. Qualizza intervened to assert any interest in the property subject to garnishment. *See* Mo. Sup. Ct. R. 90.09 (providing third parties a mechanism to assert an interest in property subject to garnishment).

### II.    *Qualizza agreed to joint and several liability for the entire Judgment Amount.*

Next, Qualizza argues that he is likely to succeed on the merits of the Motion to Quash for two general reasons. Mot. 15–18. First, Qualizza asserts that the subject accounts are almost all exempt or belong to third parties. *Id.* 15–16. Again, the Missouri Supreme Court Rules provide procedural safeguards that, if exercised by parties in interest, forbid execution upon exempt or third-party property. *See* Mo. Sup. Ct. R.  90.035; Mo. Sup. Ct. R.  90.09.

Second, Qualizza disputes his liability for the remaining Judgment Amount on two grounds. First, citing an "amendment" to a settlement agreement that neither he **nor USB** signed

(the "Proposed Settlement Modification"), Qualizza claims that the remaining Judgment Amount is in dispute. *Id.* at 16. Specifically, Qualizza asserts that the Proposed Settlement Modification "authorized USB to release its lien [on the Last Hotel] for less than full payment of the" Judgment Amount, thereby increasing the deficiency USB seeks to collect upon here.[2] *Id.* And citing disagreements between himself and his co-managers and co-defendants concerning the closing of the Last Hotel, Qualizza argues that the remaining Judgment Amount is the result of a transaction that he did not authorize. *Id.* at 17.

Qualizza's liability under the Consent Judgment, however, is "*joint[] and several[] in the* sum of Fourteen Million Two Hundred Fifty Thousand and 00/100 Dollars ($14,250,000), plus interest . . . on *any unsatisfied portion of the Judgment [Amount]* as of the 'Stay Termination Date.'" ECF No. 257 (emphasis added).. Qualizza agreed that he would satisfy the remaining Judgment Amount as of the Stay Termination Date, and any dispute he has with that liability is not pertinent to USB.

### III.    USB has no intent to execute upon exempt or third-party property.

Finally, relying on a flawed understanding of garnishment proceedings, Qualizza asserts that the balance of harms and public interest weigh in favor of injunctive relief. Mot. at 18–20. As he does at many points throughout the Motion, Qualizza assumes, without discussion, that USB will execute upon exempt property or property belonging to third parties. *Id.* USB has no intent to execute upon exempt or third-party property.

---

[2] USB never entered into the Proposed Settlement Modification. Nor did USB agree to modify the Consent Judgment. USB did, however, release its lien on the Last Hotel to facilitate the property's sale subject to the condition that USB receive all net proceeds from that sale. That lien release had no negative impact on Qualizza's personal liability under the Consent Judgment: had the sale not completed for any number of reasons, Qualizza would have remained personally liable for the entire $14.25 million Judgment Amount.

**Argument**

### I.      *Legal Standard.*

When deciding whether to issue injunctive relief, "courts consider the four *Dataphase* factors: (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Schmitt v. Rebertus*, 148 F.4th 958, 966 (8th Cir. 2025) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 119 (8th Cir. 1981) (internal quotation marks omitted).

No single *Dataphase* factor is determinative. *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (quoting *Dataphase*, 640 F.2d at 113). But the likelihood of success factor is the "most significant." *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013) (internal quotation omitted). "[T]he absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied . . . ." *CDI Energy Servs. v. West River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009). Nevertheless, Qualizza's Motion fails on all four factors.

### II.     *Qualizza cannot establish a likelihood of success on the merits because there is no underlying claim.*

The Motion fails as a matter of law because Qualizza does not have an underlying claim or cause of action. A "party moving for a [injunctive relief] must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). Where a motion for an injunction is based upon harm that is "entirely different from the claim raised and the relief requested" in the underlying lawsuit, "as a matter of law [the movant is] not entitled to a preliminary injunction." *Id.; see, e.g.*, *Owens v. Severin*, 293 F. App'x 425, 425 (8th Cir. 2008) ("We conclude that the

district court properly denied Owens's motions for a preliminary injunction because the relief sought was unrelated to the allegations in his complaint.").

Qualizza has no claim or cause of action against USB. All claims in this case were resolved or dismissed with prejudice by operation of the Consent Judgment. As a matter of law, Qualizza is not entitled to a preliminary injunction.

Assuming Qualizza's Motion to Quash could underlie a motion for injunctive relief, as Qualizza suggests, there is no probability that it will succeed. As discussed above, the fact that the accounts subject to USB's writs of garnishment are mostly exempt or belong to third parties does not mean USB *will* execute upon them. USB has no interest in executing on property to which it is not entitled. And Missouri's rules of civil procedure provide Qualizza and his wife straightforward mechanisms to protect any such property. *See* MO. SUP. CT. R. 90.035 (permitting judgment debtors to file a claim of exemption to protect exempt property); MO. SUP. CT. R. 90.09 (providing third parties a mechanism to assert an interest in property subject to garnishment).

Second, citing (1) the Prosed Settlement Modification that neither he nor USB signed, and (2) disagreements with his co-defendants and co-managers, Qualizza argues that the remaining portion of the Judgment Amount is in dispute. Neither argument has merit. Addressing the former, the Proposed Settlement Agreement was never executed, and Qualizza's reference to it is a distraction. Moreover, USB's release of its lien on the Last Hotel for less than the Judgment Amount did not negatively impact his personal liability: whether the sale of the Last Hotel closed or not, Qualizza was and is personally liable for the entire Judgment Amount.

Qualizza's disagreements with his co-defendants or co-managers concerning the management and sale of the Last Hotel do not concern USB. USB remains free to enforce the Consent Judgment against any or all of Defendants by any means available under governing law. If Qualizza has a basis to challenge his co-managers' decisions, that dispute does not involve USB.

To establish a probability of success on the merits, a movant must only demonstrate "fair ground for litigation." *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016–17 (8th Cir. 2022). There are no grounds for litigation here. A motion to quash cannot form the basis for injunctive relief. And if Qualizza were to somehow repackage his Motion to Quash as a complaint, a court would swiftly dismiss it on a Rule 12(b)(6) motion.

### III.   *All alleged harm is quantifiable and speculative.*

Regarding irreparable harm, a "court must determine that a cognizable danger of future violation exists and that danger must be more than a mere possibility." *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982) (citation omitted). An injunction may be used only to prevent "a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury . . . ." *Id.* (internal quotation omitted). Further, injunctive relief is "not appropriate" where there is an adequate remedy at law. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)

There is no presently existing actual threat here, and Qualizza has an adequate remedy at law if any harm were to occur. As discussed, Qualizza simply asserts, with nothing more, that USB will liquidate property to which it is not entitled. Qualizza has made no showing that will happen, nor could he if he tried. There is no reason to believe that USB will disregard Missouri law and execute upon property not legally subject to execution.

Even if USB did execute upon exempt or third-party property, Qualizza would have an adequate remedy at law. The Motion advances the novel theory that "[n]o monetary remedy can restore" the losses he would incur if USB were to improperly liquidate his financial accounts.[3] "Irreparable harm occurs when a party has no adequate remedy at law, typically because [his] injuries cannot be fully compensated through an award of monetary damages." *Gen. Motors Corp.*

---

[3] Qualizza also argues that immediate irreparable harm will occur if USB were to execute upon his nonexempt checking and savings even though he concedes these accounts are subject to execution.

*v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). "Economic loss, on its own, is not an irreparable injury so long as the losses can be recovered." *Dish Network Serv. L.L.C. v. Laducer*, 725 F.3d 877, 882 (8th Cir. 2013).

The harm Qualizza complains of, including any tax consequences, could be quantified and recovered to the cent. Qualizza has an adequate remedy at law and is not at risk of irreparable harm. "Failure to show irreparable harm is an independently sufficient ground upon which to deny" injunctive relief. *Watkins Inc.*, 346 F.3d at 844. Indeed, "[o]nce a court determines that the movant has failed to show irreparable harm absent an injunction, the inquiry is finished and the denial of the injunctive relief is warranted." *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987).

## IV. Because all alleged harm is speculative, the equities weighs in favor of USB.

When balancing harms, Eighth Circuit courts weigh the threat to each of the parties' rights that would result from granting or denying the injunction. *Noodles Dev., LP v. Ninth St. Partners, LLP*, 507 F. Supp. 2d 1030, 1039 (E.D. Mo. 2007) (citing *Baker Elec. Co-op, Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994)). "Also, the potential economic harm to each of the parties and to interested third parties of either granting or denying the injunction is relevant." *Id.*

As explained, Qualizza is jointly and severally liable for the entire Judgment Amount. And in the Consent Judgment, Qualizza agreed that upon the Stay Termination Date, USB would be free to collect the unsatisfied balance of the Judgment Amount from any or all Defendants by any means available under governing law. Qualizza still owes USB approximately $1 million. Each day that Qualizza obstructs the satisfaction of that amount, USB is harmed.

Conversely, Qualizza asks the Court to assume that USB will disregard Missouri law and execute upon exempt property and property belonging to third parties. As discussed, USB has no

intent to do so. And Missouri's rules of civil procedure already provide Qualizza and third parties the means to protect property not subject to execution.

The harm USB will incur if it is enjoined from further garnishment is real. The harm that Qualizza feigns is imagined. "In conducting the 'balance of harms' analysis required under *Dataphase*, it is obvious that an illusory harm to the movant will not outweigh an actual harm to the non-movant." *Noodles Dev., LP*, 507 F. Supp. 2d at 1038–39. The balance of the harms here can only fall in USB's favor.

### V.       *The public interest weighs in favor of USB.*

The Motion and its counterpart, the Motion to Quash, are dilatory, speculative, and detached from the facts or law of this case. Qualizza is obligated to USB. When he failed to satisfy his obligation voluntarily, USB initiated lawful, procedurally proper garnishment proceedings. And throughout this post-judgment proceeding, USB has satisfied the rules and requirements set out in the Missouri Supreme Court Rules.

Those same rules provide an orderly process for judgment debtors and third parties to prevent execution upon exempt or third-party property. Qualizza elected to forego those procedures in favor of a more extreme and unjustified measure: injunctive relief. The public interest would not be served by an injunction here. It would only encourage future judgment debtors to frustrate lawful post-judgment procedures with procedurally and substantively deficient motions.

### VI.      *If the Court enjoins USB, Qualizza should be required to post a bond sufficient to pay the remaining Judgment Amount plus interest and attorney fees.*

Federal Rule of Civil Procedure 65(c) provides that a "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been

wrongfully enjoined or restrained." "The amount of the bond rests within the sound discretion of the trial court." *Stockslager v. Carroll Elec. Co-op. Corp.*, 528 F.2d 949, 951 (8th Cir. 1976).

If the Court issues an injunction restraining further garnishment action against Qualizza, Qualizza should be required to deposit a bond in an amount sufficient to (1) satisfy his joint and several liability for the remaining portion of the Judgment Amount, (2) interest that will continue to accrue until the Judgment Amount has been satisfied in its entirety, and (3) attorney fees that USB will incur to lift the restraint. Thus, USB requests that if the Court issues an injunction, Qualizza be required to deposit a bond of at least $1.4 million.

WHEREFORE, for the foregoing reasons, Judgment Creditor U.S. Bank National Association respectfully requests that the Court deny Judgment Debtor Michael Qualizza's Application for Temporary Restraining Order and Injunctive Relief.  If the Court grants Qualizza's Motion, USB respectfully requests that Qualizza be required to deposit a bond of $1.4 million. USB further requests that the Court issue such further relief as the Court deems just and proper.

Dated: July 23, 2026

Respectfully submitted,

THOMPSON COBURN LLP

By: */s/  Caleb S. Crahan*
    Brian W. Hockett, 52984MO
    Caleb S. Crahan, 76111MO
    One U.S. Bank Plaza
    St. Louis, MO 63101
    P: 314 552 6000
    bhockett@thompsoncoburn.com
    ccrahan@thompsoncoburn.com

*Attorneys for Plaintiff U.S. Bank National Association*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of July, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system to all counsel of record and mailed to Judgement Debtor at the address below.

Michael Qualizza
1220 Marly Way
Austin, TX 78733

*/s/  Caleb S. Crahan*