**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| U.S. BANCORP COMMUNITY DEVELOPMENT CORPORATION and U.S. BANK NATIONAL ASSOCIATION,<br>Plaintiff/Judgment Creditor,<br><br>v.<br><br>MICHAEL QUALIZZA,<br>Defendant/Judgment Debtor.<br><br>-Post-Judgment Garnishment Proceedings | ) | Case No: 4:21-cv-00120-MTS |

**DEFENDANT MICHAEL S. QUALIZZA'S RESPONSE IN OPPOSITION TO DEFENDANT FREEMAN'S VERIFIED PETITION TO REGISTER FOREIGN JUDGMENT (ECF NOS. 322, 323)**

Defendant Michael S. Qualizza ("Qualizza"), appearing pro se in his individual capacity, respectfully submits this Response in Opposition to Defendant Neil D. Freeman's Verified Petition to Register Foreign Judgment (ECF No. 322) and Memorandum in Support (ECF No. 323) (together, the "Petition"). The Petition was filed on August 25, 2026. This Response is filed fourteen days later, within the time allowed by Local Rule 4.01(B). To the extent the Petition invokes Mo. Rev. Stat. § 511.760, this Response also presents Qualizza's defenses and objections by appropriate pleading within thirty days of the Petition's filing and service, and thus within any period that § 511.760.8 could be read to impose. Qualizza further notes that no registration under the statute has occurred. To "register" is "to file and record a foreign judgment in a court of this state," § 511.760.1(4); registration occurs when an authenticated copy is filed in the circuit clerk's office, and the time for defenses runs from that event and from service or the clerk's notice. *Berman, Deleve, Kuchan & Chapman, LLC v. 417 Rentals, LLC*, 598 S.W.3d 915, 919–20 (Mo. Ct. App. 2020). Nothing has been filed in a court of this state, no notice under § 511.760.5 has been issued, and no period under § 511.760.7 or § 511.760.8 has begun to run.

## I. INTRODUCTION

Freeman asks this Court to do something no statute permits, using an order that does not qualify, to accomplish a result equity forbids. He seeks to "register" an interlocutory funding order from a still-pending Illinois chancery case and then convert it into a $528,037 personal discount against the amounts the Judgment Creditor may collect from Freeman alone. The requested relief would not reduce the Consent Judgment by a single dollar. It would simply redirect collection of the same balance toward Freeman's co-debtors, including Qualizza. At the same time, Freeman's chosen litigation counsel has already been paid $50,000 from the very closing proceeds whose allocation Freeman now calls unjust. The Petition should be denied. In the alternative, any credit the Court may find warranted must be applied to reduce the Judgment balance for all judgment debtors and only after a complete accounting of the March 5, 2026, closing disbursements.

## II. BACKGROUND

1. On October 15, 2025, this Court entered the Judgment by Consent with Stay of Execution (the "Consent Judgment") against Qualizza, Freeman, and Dixon, jointly and severally, in the amount of $14,250,000, with interest accruing from the February 28, 2026, Stay Termination Date. (ECF No. 257.)

2. On April 29, 2026, the Judgment Creditor filed a Partial Satisfaction of Judgment reflecting a recovery of $13,299,435.43 from the Last Hotel's March 5, 2026, sale (ECF No. 259).

3. The order Freeman asks this Court to register (the "Illinois Order") was entered on January 13, 2025, in Michael Qualizza, individually and derivatively on behalf of DFQ Management LLC v. Neil D. Freeman, No. 2022 CH 11088 (Cir. Ct. Cook Cnty., Ill.), an action brought by Qualizza against Freeman for breach of fiduciary duty. That action remains pending and active. By order entered March 30, 2026, the Illinois court (i) denied the former Receiver's Motion to Retain Jurisdiction in its entirety; (ii) dismissed the counterclaim asserted against Qualizza by ARQ-1501 St. Louis LLC and Freeman, with prejudice as to Count I and without prejudice as to Count II; (iii) denied Freeman's motion to dismiss Qualizza's Third Amended Complaint in its entirety; (iv) stayed discovery responses pending a May 8, 2026 status; and (v) continued six further motions, including

the former Receiver's fee petition and Freeman's June 13, 2025 motion to amend the court's order regarding the Receiver's fees. (Exhibit B, Order of Mar. 30, 2026, ¶¶ 1–7.) No final judgment has been entered in that action, and the fee-and-advances issues Freeman presents here remain before the Illinois court on continued motions. The judge who entered the Illinois Order has since been reassigned. Freeman, for his part, continues to litigate these same intra-party accounts in Illinois. On or about August 31, 2026, ARQ-1501 St. Louis LLC, derivatively on behalf of DFQ Management LLC, and Freeman filed a new action against Qualizza in the Circuit Court of Cook County, Law Division, No. 2026 L 009289.

4. The Illinois Order was entered in the context of a receiver's $200,000 capital call to continue operating the Hotel, months before any sale contract was in place. As quoted in Freeman's own memorandum, it addressed reimbursement of operating advances "at closing of the sale of the Hotel" and their priority (ECF No. 323 at 5-6).

5. Eight months after the Illinois Order, on September 16, 2025, the seller entities signed a Purchase and Sale Agreement with SIG Capital Holdings, LLC for a purchase price of $16,500,000 (ECF No. 322, Ex. B). One month later, on October 15, 2025, Freeman signed the comprehensive Settlement Agreement, and this Court entered the Consent Judgment. Freeman's memorandum concedes that "nothing in the Settlement Agreement addresses how the proceeds of a Hotel sale would be allocated" (ECF No. 323 at 5). It identifies no provision that preserves the priority he now asserts against the Judgment Creditor's recovery.

6. The Hotel closed on March 5, 2026, for $14,000,000, $2,500,000 below the PSA price Freeman cites (ECF No. 323 at 8). The executed Seller's Closing Statement (Chicago Title Company, LLC, Escrow No. 25-10959CHE) disbursed $13,299,435.43 to the Judgment Creditor and $700,564.57 to others, including a $350,000 broker's commission, $70,240.45 in attorney fees to Spencer Fane LLP, and $50,000 in attorney fees to "Perkaus & Farley L.L.C." (i.e., Perkaus & Farley LLC). The same firm represents Freeman personally in this proceeding and filed the present Petition. The Seller entity received $0.00 (ECF No. 318-10). The Judgment Creditor itself relies on that document as the operative closing statement (see W.D. Tex. No. 1:26-cv-02251, Doc. 7 at 4).

7. By Freeman's own itemization, $326,205 of his claimed $528,037 in advances predates the PSA; $201,832 was advanced after the PSA was signed; and $141,816.59 was advanced after Freeman signed the Settlement Agreement and consented to the Judgment. (ECF No. 323 at 7, 11.)

8. Freeman acknowledges that the Judgment Creditor is pursuing collection from Freeman and Qualizza by garnishment while "Dixon faces no corresponding collection effort." (ECF No. 323 at 15.)

## III. ARGUMENT

### A. The Illinois Order Is Not a Registrable "Foreign Judgment" Because It Is Interlocutory, Modifiable, and Not a Money Judgment.

Section 511.760 reaches only a "judgment, decree or order . . . which is entitled to full faith and credit in this state." Mo. Rev. Stat. § 511.760.1(1). Full faith and credit extends to final adjudications; an order that remains subject to modification is not final and is not entitled to registration. Siegel v. Mosier, 632 S.W.2d 76 (Mo. Ct. App. 1982) (Uniform Enforcement of Foreign Judgments Law applies only to judgments entitled to full faith and credit; obligations subject to modification are not final and may not be registered); *Estate of Angevine v. Evig, 675 S.W.2d 440* (Mo. Ct. App. 1984) (Illinois judgment lacking finality not entitled to full faith and credit); State ex rel. *Lumber Mut. Ins. Co. v. Ohmer, 131 S.W.3d 872* (Mo. Ct. App. 2004) (enforcement by execution requires a final judgment; enforcement of an interlocutory order is void). The principle applies with even greater force here: unlike a child support arrearage that reduces to a sum certain as installments accrue (see Siegel, 632 S.W.2d at 77), the Illinois Order does not specify a fixed amount owed to any identified party.

Missouri's courts describe the Uniform Enforcement of Foreign Judgments Law as "derivative": it "operates only upon extant foreign judgments entitled to full faith and credit by the registering state," and "[t]he registering state can give the foreign judgment no greater effect than it would receive from courts in its rendering state." In re *Shipley v. Trustee* for Child Support Payment, 472 S.W.3d 609, 612 (Mo. Ct. App. 2015) (quotation omitted). Shipley refused to register orders that "do not award relief of any kind to any party, let alone monetary relief," because such orders "are

not judgments." Id. at 613. "Only final judgments of a sister state are entitled to full faith and credit." Estate of Angevine, 675 S.W.2d at 443; accord North American Savings Bank, F.S.B. v. Williamson, 482 S.W.3d 862, 866 (Mo. Ct. App. 2016); Berman, 598 S.W.3d at 919 n.4. Full faith and credit attaches to "a final determination of the nature and amount of [a] claim." The credit due a foreign judgment "is the credit which it has in the State from which it is taken, not the credit that under other circumstances and conditions it might have had." Morris v. Jones, 329 U.S. 545, 551 (1947).

The Illinois Order is interlocutory relief entered in a case that remains pending, by a judge who no longer presides over it. The court now assigned to that action retains full authority to modify, clarify, or vacate the Order before any final judgment enters. A final judgment is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment"; an order entered while the court retains jurisdiction and continues to conduct proceedings is not final. *Gasca v. Precythe*, 171 F.4th 1053, 1056 (8th Cir. 2026) (quotation omitted). By that measure, the Illinois Order is not final. The Illinois court ruled on motions in the same case as recently as March 30, 2026. It continued six more, including the former Receiver's fee petition and Freeman's own motion to amend the court's order on the Receiver's fees. **(Exhibit B, ¶¶ 1–7.)** The Illinois Order remains open to challenge in Illinois. Freeman may point to decisions that relax finality for purposes of issue preclusion; *see In re Nangle*, 274 F.3d 481, 484–85 (8th Cir. 2001). Still, those decisions ask whether a prior ruling may be given preclusive effect in later litigation between the same parties, not whether an order may be registered and executed upon as a judgment. Enforcement by execution requires a final judgment, and an attempt to enforce an interlocutory order is void. *Ohmer*, 131 S.W.3d 872. The Illinois Order is not entitled to full faith and credit, and it cannot be registered.

The Petition also founders on a more basic defect: the Illinois Order is not a money judgment. It names no judgment debtor, awards no sum against any party, and supports no levy. (See ECF No. 322, Ex. A.) The statute defines "judgment debtor" as "the party against whom a foreign judgment has been rendered," § 511.760.1(2); the Illinois Order was rendered against no one, and Qualizza was the plaintiff in that action. Section 511.760.6 contemplates levy "upon any property of the judgment debtor which is subject to execution or other judicial process for satisfaction of judgments," presupposing a debt reduced to a sum certain against an identified debtor. A directive

about the priority of reimbursement at a future closing is, at most, a contingent expectancy, and "a debt which is conditional or dependent for its existence upon some contingency" is not a subsisting obligation on which process may issue. *Beaufort Transfer Co. v. Fischer Trucking Co.*, 357 F. Supp. 662, 667 (E.D. Mo. 1973). It is not an adjudicated debt that can be registered, levied upon, or made "a final personal judgment" of any court. § 511.760.7.

**B. This Court Is Not a Registration Forum for State-Court Orders.**

Section 511.760 authorizes registration "in any court of this state." Mo. Rev. Stat. § 511.760.2. It defines "register" as "to file and record a foreign judgment in a court of this state," § 511.760.1(4), and it assigns duties to "[t]he clerk of the registering court" that only a Missouri clerk performs. § 511.760.3. This Court is a court of the United States. The federal registration statute, 28 U.S.C. § 1963, authorizes registration only of judgments entered by the enumerated federal courts, and "Congress' express provision for registration of the judgment of one federal court in another federal court in 28 U.S.C. § 1963 by implication excludes the registration of state-court judgments in federal court." *Caruso v. Perlow*, 440 F. Supp. 2d 117, 119 (D. Conn. 2006). Federal courts have therefore rejected precisely the maneuver the Petition attempts: "a federal court has no authority to borrow [a state's] registration shortcut for foreign state-court judgments and use that state procedure in place of the federal shortcut provided by Congress." *Id.* (vacating, for want of jurisdiction, the registration of state-court judgments in federal district court). The same rule governs in this Circuit. *Amin v. Suthikant*, No. 95-6001-CV-SJ-6, 1995 WL 781142, at *1 (W.D. Mo. Nov. 22, 1995) ("Because the registration process provided in § 1963 is limited to certain federal judgments, plaintiffs are barred from registering their Illinois judgment with this court."); *see also Griffith v. Paran*, No. 2:19-cv-12030, ECF No. 15 (E.D. Mich. Jan. 16, 2020) (adopting report and recommendation and dismissing, for lack of jurisdiction, an action seeking to register a state-court judgment in federal district court). The Eighth Circuit has long treated the two statutes as distinct regimes, describing § 511.760 as providing "in some detail, and in contrast with the shorter and more peremptory language of § 1963, for the registration of a foreign judgment" in the courts of Missouri. *Stanford v. Utley*, 341 F.2d 265, 267 (8th Cir. 1965).

Federal Rule of Civil Procedure 69(a)(1) does not fill the gap. Rule 69 adopts the forum state's procedure for executing on this Court's own judgment; its enforcement provisions "simply provide

for methods by which a creditor may collect a judgment." *In re Moss*, 267 B.R. 839, 843 (B.A.P. 8th Cir. 2001). It is not a vehicle for transforming this Court into a registry for interlocutory orders of other sovereigns. The holder of a state-court judgment who wants a federal judgment "must fall back upon the traditional, if rather cumbersome, strategy of bringing a civil action on the state-court judgment" with an independent basis for federal jurisdiction. *Caruso*, 440 F. Supp. 2d at 119; *Amin*, 1995 WL 781142, at *1. Freeman has filed no such action, and none could be lodged inside a post-judgment garnishment proceeding on another creditor's judgment. Nor does *Active Way International Ltd. v. Smith Electric Vehicles Corp.*, No. 5:16-06158-MC-RK, 2017 WL 2869951 (W.D. Mo. July 5, 2017), suggest otherwise. There, a final foreign-country money judgment became a federal-court judgment in a separately filed diversity action under Missouri's Uniform Foreign Country Money-Judgments Recognition Act, Mo. Rev. Stat. § 511.778, after the defendant defaulted. *Id.* at *1. Nothing in that decision concerns § 511.760, an interlocutory order, or a petition filed within another creditor's collection proceeding. The Court can and should consider what the Judgment Creditor may collect under its own Consent Judgment without "registering" anything. The Court should deny the Petition's registration request because no statute authorizes it.

**C. Even If It Were Registrable, the Illinois Order Does Not Govern the March 2026 Closing.**

The Illinois Order was entered in January 2025 to resolve a receiver-era funding standoff. The transaction whose proceeds Freeman now seeks to reallocate did not exist until September 16, 2025, was restructured thereafter, and closed on March 5, 2026, at a price $2,500,000 below the contract Freeman cites. Between the Order and the closing, Freeman signed a comprehensive Settlement Agreement fixing the parties' economics with the Judgment Creditor, consented to a $14,250,000 joint and several judgment, and, by his own admission, secured no provision preserving the priority he now asserts. (ECF No. 323 at 5.) A party who compromises his position in a global settlement cannot later revive, against the settlement's counterparty and to the prejudice of his co-debtors, a priority he never bargained to keep.

The Order's own scope confirms the mismatch. It responded to a $200,000 capital call; Freeman now claims $528,037, of which $201,832 was advanced after the PSA was signed and $141,816.59 after he consented to the Judgment. (ECF No. 323 at 7, 11.) Whatever the January 2025 Order

contemplated, it was not a rolling, open-ended priority over a closing occurring fourteen months later under a transaction that had not been negotiated when the Order issued.

Missouri courts "accept foreign judgments only in the form that they were rendered" and "do not go beyond the language of the judgment in affording full faith and credit to it." *North American Savings Bank*, 482 S.W.3d at 867 (quotation omitted). Later, the registered instrument does not address that it "never became a judgment in Missouri." *Id.* at 868. The Illinois Order speaks to reimbursement "at closing of the sale of the Hotel" as then contemplated in a receivership. It says nothing about a sale contract signed eight months later, a Settlement Agreement and Consent Judgment entered ten months later, or a closing fourteen months later at a different price. The Supreme Court settled long ago that an order fixing the priority of receiver-era advances does not bind the court that later administers the fund. When a claim's priority is presented at distribution, "the court is not foreclosed by the order of appointment but may consider and determine the extent of liability of the property to such claim, and what its rights of priority may be," and "the parties in interest may rightfully challenge its priority, even if it were within the very letter of the order of appointment of the receiver." *Louisville, Evansville & St. Louis R.R. Co. v. Wilson*, 138 U.S. 501, 506 (1891). Even a final foreign judgment establishing a claim "does not necessarily involve a determination of what priority the claim should have," and a claimant cannot, "by proving his claim in judgment form," gain "a priority which he would not have had" otherwise: Morris, 329 U.S. at 549, 554.

**D. Equity Bars the Setoff Freeman Requests.**

Freeman's own authority holds that equitable setoff exists "to effect clear equity or to prevent irremediable injustice." *Stewart Title Guar. Co. v. Cmty. Title Co.*, 924 S.W.2d 62 (Mo. Ct. App. E.D. 1996) (cited at ECF No. 323 at 9-10). Unjust enrichment likewise sounds in equity. He who seeks equity must do equity, and a party who comes to the court with unclean hands is not entitled to equitable relief. The record forecloses Freeman's claim.

First, the closing Freeman characterizes as unjust paid $50,000 of the Seller's proceeds to Freeman's own personal litigation counsel, the same firm that signed the present Petition. At the same time, the Seller entity received nothing, and the entities' outstanding accounting obligations went unfunded. Second, the $700,564.57 in seller-side disbursements, not any act of the Judgment

Creditor, is what produced the very shortfall the Judgment Creditor now garnishes all three judgment debtors to collect. Third, Freeman represents that his advances kept the property within the $50,000 material-deterioration threshold of PSA § 4.08 (ECF No. 323 at 12-13). Yet, the buyers extracted a $500,000 price reduction for property issues before closing, ten times that threshold. Freeman's stewardship of the asset and of the closing is at the center of why the fund is short. Equity does not award a priority out of a diminished fund to the party most responsible for its diminution.

Missouri law confirms the point. Setoff of judgments is an equitable remedy, available where the judgment debtor's claim against the judgment creditor "has been judicially determined" and "the judgment creditor is insolvent." *Jegglin v. Orr*, 29 S.W.2d 721, 723 (Mo. Ct. App. 1930). Setoff also requires mutuality: the debts must be "between the same parties acting in the same capacity." *In re Bridge Info. Sys., Inc.*, 314 B.R. 421, 429 (Bankr. E.D. Mo. 2004). Neither element is present. Freeman's claimed reimbursement right runs, if anywhere, against the seller entities and the closing fund; it has never been reduced to a judgment against the Judgment Creditor, and the Judgment Creditor is not insolvent. Section 511.760 itself treats "setoff" as a defense "asserted by the defendant" against the foreign judgment, § 511.760.8, not a sword by which the holder of a foreign order reduces a different creditor's judgment. The unclean-hands bar applies with particular force where the misconduct concerns "the very transaction at issue," *Stephens, Inc. v. Geldermann, Inc.*, 962 F.2d 808, 817 (8th Cir. 1992), and has injured the party invoking it, *Bridge*, 314 B.R. at 430. Both conditions are met: the closing disbursements that paid Freeman's own counsel $50,000 while leaving the Seller with nothing are the transaction whose proceeds he asks the Court to reallocate, and the resulting shortfall is what the Judgment Creditor now garnishes from Qualizza. "One who seeks equitable relief must approach the court with clean hands. He will not be allowed to profit from his own wrongdoing." *Earle R. Hanson & Assocs. v. Farmers Coop. Creamery Co.*, 403 F.2d 65, 70 (8th Cir. 1968). The doctrine does not require fraud; it is enough that "the result induced by his conduct will be unconscionable either in the benefit to himself or the injury to others." *Id.* (quotation omitted). And any adjustment among claimants to a diminished fund "must be 'scrupulously measured and fitted to the actual injury that has been done,'" which requires proof that the claimed advances were actually owed and actually benefited the property, not a ledger total. *In re Fox Hill Office Investors, Ltd.*, 101 B.R. 1007, 1012, 1022–23 (Bankr. W.D. Mo. 1989).

**E. In the Alternative: Any Credit Must Reduce the Judgment Balance as to All Judgment Debtors, After a Complete Accounting.**

Freeman is careful to ask only that "the amount U.S. Bank . . . seeks to collect from Freeman" be reduced. (ECF No. 322, Prayer ¶ B.) By design, that relief leaves the Judgment balance untouched and redirects collection of the same dollars toward Freeman's co-debtors, one of whom, by Freeman's own account, faces no collection effort at all. (ECF No. 323 at 15.) Equity purchased for one debtor at another's expense is not equity.

If the Court concludes that the $528,037 "in substance" already reached the Judgment Creditor (ECF No. 323 at 12), then the coherent remedy is an adjustment of the Judgment balance itself, applied for the benefit of all three judgment debtors equally, and only after a complete accounting of the March 5, 2026 closing: every disbursement, every payee, and the authority for each, including the $350,000 commission, the $120,240.45 in attorney fees (of which $50,000 went to Freeman's own counsel), and the allocation decisions that produced a $0.00 balance to the Seller. Qualizza expressly reserves, and does not by this Response litigate, his claims against Freeman, which Freeman concedes the Settlement Agreement's releases do not reach. (ECF No. 323 at 5, citing Settlement Agreement § 8(a)-(b).)

That is also what the law of joint obligations requires. "Any consideration received by the judgment creditor in payment of the judgment debtor's obligation discharges, to the extent of the amount of value received, the liability to the judgment creditor of all other persons liable for the loss." *In re Haugen*, 998 F.2d 1442, 1451 (8th Cir. 1993) (quoting Restatement (Second) of Judgments § 50(2)). The reduction runs to every co-obligor. It is measured by what the judgment creditor "actually received," which is a question of accounting. *Id.* A judgment creditor "can have but one satisfaction," and satisfaction obtained from any joint debtor discharges the others to that extent. *Hager v. McDonald*, 65 F. 200, 202 (C.C.W.D. Mo. 1895). None of that can be accomplished by a private discount to one debtor's exposure. If the $528,037 "in substance" reached the Judgment Creditor, the Judgment balance must reflect it for all three judgment debtors, and only after the accounting described above.

On September 8, 2026, Qualizza's Petition for Personal Damages was docketed as Michael S. Qualizza v. Neil Freeman, et al., No. 2622-CC13433, in the Circuit Court of the City of St. Louis,

Twenty-Second Judicial Circuit (McGraugh, J.). The Petition asserts claims against Freeman and other participants in the management of the Hotel and the March 5, 2026, closing, arising from the conduct described above. The complete verified Petition, together with the Case.net docket header, is attached (**Exhibit A**). Its pendency confirms two things: the intra-party equities Freeman asks this Court to resolve in aid of execution are genuinely disputed and are being litigated in the proper forum, and the Settlement Agreement's releases do not reach those disputes, exactly as Freeman concedes (ECF No. 323 at 5). This Court need not, and should not, adjudicate those equities in a garnishment proceeding.

F. The Judgment Creditor's Response (ECF No. 327) Confirms the Result and Supplies the Record for the Accounting.

On September 8, 2026, the Judgment Creditor filed its own opposition to the Petition. (ECF No. 327.) It agrees that the Illinois Order is “not entitled to full faith and credit in this case,” that the Uniform Enforcement of Foreign Judgments Law “operates only upon extant foreign judgments entitled to full faith and credit by the registering state,” and that Freeman's setoff and unjust-enrichment theories fail for want of mutuality. (ECF No. 327 at 4–5 (quoting *Shipley*, 472 S.W.3d at 612).) It also confirms, from the closing statement itself, that Freeman signed the March 5, 2026 closing statement and “agreed to the sale of the Hotel, the Recovery Amount obtained from that sale, and the current deficiency.” (ECF No. 327 at 2 (citing ECF No. 318-10).) Freeman thus approved, over his own signature, the very disbursements he now calls unjust, including the $50,000 paid to his own counsel and the $0.00 left to the Seller. That is the transaction-specific conduct on which the unclean-hands bar rests. *See* Part III.D, *supra*.

One sentence in ECF No. 327 requires a response. The Judgment Creditor suggests in passing that any injustice to Freeman “is remediable by the actual obligor under the Illinois Order: Qualizza.” (ECF No. 327 at 5.) The Illinois Order says no such thing. By its terms as the Judgment Creditor itself quotes them, the Order directs that Freeman's advances “be reimbursed at closing of the sale of the [Last] Hotel” as “a preference to be returned to Freeman before any distributions are made to any lender, equity or other vendor.” (ECF No. 327 at 2 (quoting ECF No. 322-1).) That is a priority against a fund at a closing, not a money judgment against any person; it names no obligor, awards no sum against Qualizza, and was entered in an action Qualizza brought as plaintiff. Freeman does

not contend otherwise: his own theory is that the advances “in substance” reached the Judgment Creditor through the closing proceeds, not that Qualizza owes him $528,037. (ECF No. 323 at 12.) Whether Freeman has any claim against Qualizza is a question for the plenary actions now pending in Illinois and Missouri, not for this garnishment proceeding. Qualizza does not adopt the Judgment Creditor's characterization and expressly disputes it.

Finally, ECF No. 327 supplies figures the Court will need for the accounting requested in Part III.E: the Judgment Creditor states that the principal balance remaining after application of the Recovery Amount was $971,646.76 as of March 7, 2026, that principal and interest outstanding totaled $1,036,812.43 as of September 7, 2026, and that interest accrues at $239.58 per day. (ECF No. 327 at 2 & n.1.) Those figures are stated by counsel without supporting calculation. If any credit is to be fixed, it must be fixed against a verified accounting of the Judgment balance and of the March 5, 2026 closing disbursements, applied for the benefit of all three judgment debtors.

## IV. CONCLUSION

The Court should deny the Verified Petition to Register Foreign Judgment and the associated request for setoff. In the alternative, the Court should order that any credit be applied to reduce the Judgment balance as to all judgment debtors and direct a complete accounting of the March 5, 2026, closing disbursements before any credit is fixed. Qualizza requests such other relief as the Court deems proper.

Respectfully submitted,

**Michael S. Qualizza**
Pro Se
1220 Marly Way
Austin, Texas 78733
Telephone: (773) 960-1181
Email: mqualizza@yahoo.com

**Dated**: September 8, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2026, I submitted the foregoing, with its exhibits, to the Clerk of Court for filing via email to MOED_SRL_Filings@moed.uscourts.gov in accordance with the Court's procedures for self-represented litigants, and that on the same date I served a true and correct copy by U.S. Mail, first class, postage prepaid, and, as a courtesy, by email, upon the following:

**THOMPSON COBURN LLP**
**Brian W. Hockett, 52984MO**
**Caleb S. Crahan, 76111MO**
**One US Bank Plaza, 505 N. 7th Street, 28th Floor**
**St. Louis, MO 63101**
**bhockett@thompsoncoburn.com; ccrahan@thompsoncoburn.com**
**Attorneys for Plaintiff/Judgment Creditor U.S. Bank National Association**

**PERKAUS & FARLEY LLC**
**John R. Perkaus**
**1343 N. Wells Street**
**Chicago, IL 60610**
**john@perkausandfarley.com**
**Attorneys for Defendant Neil D. Freeman**

Respectfully submitted,

Michael S. Qualizza
Pro Se
1220 Marly Way
Austin, Texas 78733
Telephone: (773) 960-1181
Email: mqualizza@yahoo.com

**Dated**: September 8, 2026