**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **U.S. BANK NATIONAL ASSOCIATION,**<br>**Plaintiff, Judgment Creditor,**<br><br>**v.**<br><br>**MICHAEL QUALIZZA,**<br>**NEIL D. FREEMAN,**<br>**TIMOTHY DIXON,**<br>**Defendants, Judgment Debtors.** | ) | **Case No. 4:21-cv-00120-MTS** |
| **MICHAEL QUALIZZA, NEIL D. FREEMAN,**<br>**TIMOTHY DIXON, DFQ MANAGEMENT, LLC, and 1501 WASHINGTON ST. LOUIS, LLC,**<br>**Counterclaim Plaintiffs,**<br><br>**v.**<br><br>**U.S. BANCORP COMMUNITY DEVELOPMENT CORPORATION, and U.S. BANK NATIONAL ASSOCIATION,**<br>**Counterclaim Defendants.** | ) | |

**PETITIONER NEIL D. FREEMAN'S REPLY IN SUPPORT OF HIS VERIFIED PETITION TO REGISTER FOREIGN JUDGMENT**

Petitioner Neil D. Freeman ("Freeman"), by undersigned counsel, submits this reply in support of his Verified Petition to Register Foreign Judgment (ECF No. 322) (the "Petition") and his Memorandum in Support (ECF No. 323) (the "Memorandum"), and in response to the Response of Judgment Creditor U.S. Bank National Association ("USB") (ECF No. 327) (the "Response"). Capitalized terms not defined here have the meanings given in the Petition and Memorandum.

## INTRODUCTION

The Response answers a petition Freeman did not file. It treats the Petition as an effort to bind USB, a stranger to the Illinois litigation, by claim or issue preclusion, and as an effort to reduce the Consent Judgment. The Petition is neither. Freeman does not contest the Consent Judgment, the $14,250,000 Judgment Amount, his joint and several liability, or USB's Partial Satisfaction. He asks the Court for two things. First, to register a certified order of the Circuit Court of Cook County, relief that USB, which is not the judgment debtor under the Illinois Order, opposes on no ground the Missouri Uniform Enforcement of Foreign Judgments Law (UEFJL") recognizes. Second, to credit, against the balance USB seeks to collect from Freeman by garnishment, the $528,037 that Freeman, personally and through entities he controls, advanced to keep the Hotel—USB's collateral—insured, powered, secured, and saleable until USB was paid $13,299,435.43 from its sale. Pet. ¶¶ 8–11; Mem. § IV.D.

The Response never cites the Memorandum, and it does not engage it. The Memorandum expressly disclaimed any effort to bind USB to the Illinois Order or to disturb the Consent Judgment, Mem. §§ I, IV.B–C, yet the Response is built on both premises. The Memorandum showed, with citations to the PSA, how Freeman's advances made possible the sale that paid USB, Mem. § IV.D; the Response does not address it. USB's earlier opposition (ECF No. 296) called the request an untimely affirmative defense and the advances a "wash"; the Response repeats neither point and does not answer the Memorandum's replies to them. Mem. §§ IV.C, IV.D.3. Nor does the Response dispute that the advances were made, what they paid for, or that they came from Freeman and his entities; that Qualizza refused to fund the Receiver's capital call and neither he nor Dixon contributed; or that the Cook County court had jurisdiction and its order was not procured by fraud. What USB offers instead are legal contentions that depend on mistaking the Petition for something it is not, and a mutuality argument that relies on only part of

the rule stated in USB's own authority, *Stewart Title Guaranty Co. v. Community Title Co.*, 924 S.W.2d 62 (Mo. Ct. App. E.D. 1996).

## ARGUMENT

### I. THE RESPONSE ANSWERS A PRECLUSION ARGUMENT THE PETITION DOES NOT MAKE.

#### A. Freeman does not seek to bind USB to the Illinois Order.

USB first argues that full faith and credit is unavailable because there is "no identity of parties" between this case and the Illinois case. Resp. at 3–4. The authorities it cites—*Kremer*, *Knutson*, *Haley*, *Major*, and *Snelling* address issue and claim preclusion, that is, whether a party or its privy is barred by an earlier adjudication from litigating a matter. Freeman does not contend that USB is barred from litigating anything. The Memorandum said so in terms: Freeman "does not ask this Court to bind USB," and what he seeks "requires no exercise of jurisdiction over USB at all." Mem. §§ I, IV.B. He invoked full faith and credit for a different proposition: that a valid order of a sister-state court, entered in a proceeding in which Freeman, Qualizza, and DFQ each appeared and were heard, is entitled to recognition in this Court and may be registered here. Pet. ¶ 12; Mem. § IV.A. Whether USB shares identity or privity with Qualizza is therefore beside the point. USB is not the party against whom the Illinois Order runs, and Freeman need not bind USB to establish that the Order exists, what it provides, and that Illinois would enforce it.

#### B. The UEFJL asks whether the Illinois Order is an extant judgment entitled to full faith and credit, which is a question about the Order and not about USB.

USB next argues that the UEFJL "is irrelevant" because the Illinois Order "is not entitled to full faith and credit in this case." Resp. at 4. The statute does not work that way. It defines a "foreign judgment" as "any judgment, decree or order of a court of the United States or of any

state or territory which is entitled to full faith and credit in this state." Mo. Rev. Stat. § 511.760.1(1). The law is derivative: it "operates only upon extant foreign judgments entitled to full faith and credit by the registering state," and the registering state gives the judgment "no greater effect than it would receive" in the rendering state. *Flexter v. Flexter*, 684 S.W.2d 589, 591 (Mo. Ct. App. E.D. 1985); *accord In re Shipley*, 472 S.W.3d 609, 612 (Mo. Ct. App. W.D. 2015) (cited at Resp. at 4).

Freeman asks for nothing more. The inquiry looks to the instrument and its status in the rendering state. In *Shipley*, the "orders" the registrant sought to register were clerks' procedural notices that awarded relief to no one, so there was no judgment to register. *See id.* The Illinois Order is different in kind. It is a clerk-certified order, ECF No. 322-1 at 3, that awards affirmative relief—reimbursement of Freeman's advances at closing, ahead of "any distributions" to "any lender, equity or other vendor," *id.* ¶ 4—and USB does not contend that it has been vacated, stayed, or modified. The Response identifies no defect in the Order. The only reason it offers for withholding full faith and credit is that USB was not a party to the Illinois case. That goes to whom the Order can bind, not to whether it is an extant judgment of a sister state. On the latter question a "strong presumption" of validity attaches, and the party asserting invalidity bears the burden of overcoming it. *Peoples Bank v. Frazee*, 318 S.W.3d 121, 126–27 (Mo. banc 2010). USB has made no attempt.

### C. Registration may be resisted only on narrow grounds, none of which are asserted by USB.

Registration proceeds under Mo. Rev. Stat. § 511.760 and Mo. Sup. Ct. R. 74.14. *See Peoples Bank*, 318 S.W.3d at 127 n.4. The UEFJL speaks of "the defendant in an action on the foreign judgment," Mo. Rev. Stat. § 511.760.8, and defines the "judgment debtor" as "the party against whom a foreign judgment has been rendered," *id.* § 511.760.1(2). USB is neither. By its

own description, the obligor under the Illinois Order is Qualizza. Resp. at 5. The statute does not say in terms that only a judgment debtor may resist registration, and the Court need not decide whether a stranger to the judgment may do so, because the grounds on which a sister-state judgment may be resisted are narrow: lack of subject-matter jurisdiction, lack of personal jurisdiction, or fraud in the procurement. *See Peoples Bank*, 318 S.W.3d at 126–27; *see also Corning Truck & Radiator Serv. v. J.W.M., Inc.*, 542 S.W.2d 520, 524 (Mo. Ct. App. 1976) (listing failure to give due notice among the grounds). USB asserts none of them. Registration of the Illinois Order, the first item of relief the Petition requests, should therefore be granted whatever the Court concludes about setoff.

Registration also matters to what follows. A registered foreign judgment becomes "a final personal judgment of the court in which it is registered" if the judgment debtor "fails to plead within thirty days after jurisdiction over his person has been obtained," or if "the court after hearing has refused to set the registration aside." Mo. Rev. Stat. § 511.760.7.[1] The statute contemplates service on the judgment debtor after registration, *id.* § 511.760.4–.5, and the judgment debtor of the Illinois Order is Qualizza. Registration places before this Court, on an authenticated record, an order that fixes the priority of Freeman's advances, and it answers the concern that led to reversal in *Stewart Title*: a set-off founded on "figures" that had never been reduced to any judgment. 924 S.W.2d at 64. Here the priority is fixed by a court order, and the amount is itemized and undisputed. Pet. ¶ 8.

[1]Paragraph 13 of the Petition and Section III of the Memorandum paraphrased the effect of registration as giving a registered judgment "the same effect" as a judgment of the registering court. That phrase appears in other States' enactments and in 28 U.S.C. § 1963, not in Missouri's statute. The operative provision is Mo. Rev. Stat. § 511.760.7, quoted in the text.

## II. EQUITY SUPPORTS A CREDIT, AND USB ADDRESSES ONLY PART OF THE GOVERNING RULE.

### A. *Stewart Title* recognizes an exception to mutuality that USB omits.

USB argues that no setoff lies because there is "no mutuality of debts" and "USB owes Debtor nothing." Resp. at 5. Freeman does not contend that USB owes him a debt. But USB quotes only part of the rule. *Stewart Title* holds that the mutuality requirement is not permitted to work an injustice, and that where necessary "to effect a clear equity or to prevent an irremediable injustice," set-off is allowed in equity even though the debts are not mutual. 924 S.W.2d at 65. The court added that there must be "some showing of irremediable injustice" to invoke the exception, and it reversed because the record contained none. *Id.* USB's brief addresses irremediable injustice and never mentions clear equity, but the Court need not decide whether clear equity can carry the exception alone. Freeman makes both showings on this record and, if the Court finds it insufficient, asks for a hearing. *See* Parts II.B–C, IV.

### B. The equities here are clear.

*Stewart Title* reversed a set-off because nothing supported it. The claims arose under separate contracts with different corporate parties; the amounts the offsetting party claimed were unrelated to the premiums that went unpaid; nothing in the record suggested the obligor was insolvent; and the set-off rested on no judgment. *Id.* at 63–65. The relationship here is the opposite of unrelated. There is one loan, one hotel, and one sale. The $528,037 was spent to insure, power, secure, and repair the very collateral whose sale produced the $13,299,435.43 applied to the very judgment USB now seeks to collect. Pet. ¶¶ 8–11.

The PSA required the seller to keep the Property in substantially its existing condition, make necessary repairs, and maintain the casualty and liability insurance then in place until closing (§ 5.01); allowed the buyer to refuse to close and recover its deposit if a detrimental

change in the Property's condition exceeding $50,000 went unresolved for thirty days after notice (§ 4.08); required the seller to satisfy existing mortgage liens at closing, with the buyer entitled to use the sale proceeds to do so (§ 4.07); and recited that lienholders had consented to the sale price and to the release of their liens at closing (§ 7.01(i)). ECF No. 322-2; Mem. § II.B.[2] It also placed the risk of casualty loss on the seller: if the Property was damaged before closing, the buyer could take it as damaged, at the full price but with the insurance proceeds, or the agreement would terminate. ECF No. 322-2 (Condemnation and Casualty article). The insurance Freeman funded was thus not incidental to the sale; it was how the PSA absorbed a casualty loss without unwinding the deal.

USB does not dispute any of this, and it does not explain how the sale would have closed had the insurance lapsed, the utilities been cut off, and the plumbing frozen after the November 2025 vehicle strike and cold snap. Pet. ¶ 10; Mem. § II.F. Nor does USB dispute that every dollar came from Freeman or entities he controls and none from Qualizza or Dixon, Pet. ¶ 9, even though all three guarantors are jointly and severally liable and USB is collecting the balance—$1,036,812.43 as of September 7, 2026, by USB's own accounting, Resp. at 2 n.1—by garnishment from Freeman and, as the Memorandum noted, from Qualizza, while Dixon faces no corresponding effort. Mem. § IV.D.3; *see* ECF Nos. 269–271. That is a clear equity.

---

[2]The Petition and Memorandum date the PSA September 16, 2025. Pet. ¶ 3; Mem. § II.B. The buyer's and sellers' signature pages bear September 10, 2025, ECF No. 322-2 at 16, and PSA § 10.13 fixes the Effective Date as the date of the last party's execution. Freeman notes the discrepancy for completeness. It does not affect the itemization: no advance was made between May 15, 2025, and September 16, 2025, so the same $326,205.00 preceded, and the same $201,832.00 followed, the PSA under either date. Pet. ¶ 8.

### C. That Qualizza is the obligor under the Illinois Order does not make the injustice remediable.

USB's answer is that "[a]ny injustice—feigned or actual—is remediable by the actual obligor under the Illinois Order: Qualizza." Resp. at 5. That is an assertion, not a showing, and USB offers nothing to support it. USB does not say that Qualizza has paid, is able to pay, or is willing to pay. The record points the other way: the Illinois Order itself records that Qualizza reiterated his refusal to provide any funding, ECF No. 322-1 ¶ 3 (quoted at Pet. ¶ 8), and neither Qualizza nor Dixon contributed anything to the Hotel's preservation. Pet. ¶¶ 8–9.

USB's position also assumes away the joint-and-several structure on which it relies. USB may collect its judgment from any guarantor, but it cannot be heard to say that equity is satisfied because the guarantor who alone funded the Hotel's preservation may seek reimbursement from the guarantor who refused. To the extent USB is itself garnishing Qualizza to satisfy the same balance, Mem. § IV.D.3, it is collecting from the very obligor to whom it points Freeman for relief, which makes his remedy against Qualizza less certain, not more. And the alternative is the circuity of action that equity exists to avoid: Freeman would pay USB the disputed sum and then litigate to recover it from Qualizza when the Court can resolve the matter now. To the extent Qualizza's ability to answer for the Illinois Order is material to whether the injustice is "irremediable," that is a factual question on which USB has offered no evidence and on which Freeman requests the opportunity to present his own. *See* Part IV below.

### D. USB's unjust-enrichment arguments turn on labels and measure the wrong benefit.

USB says unjust enrichment fails because it "is not a defendant" but a judgment creditor. Resp. at 5. That is a label, not a rule of restitution. Missouri courts ask whether a party was enriched by the receipt of a benefit, at another's expense, in circumstances where retention

would be unjust, and they "balance the equities between the parties." *Mo. Pub. Entity Risk Mgmt. Fund v. Am. Cas. Co. of Reading*, 399 S.W.3d 68, 78 (Mo. Ct. App. W.D. 2013) (citing *Homecomings Fin. Network, Inc. v. Brown*, 343 S.W.3d 681, 685 (Mo. Ct. App. W.D. 2011)). In this proceeding Freeman is the party seeking relief and USB is the party against whom a credit is sought. USB does not explain why its procedural posture as a judgment creditor changes whether it received a benefit that equity would not let it keep at Freeman's expense. Missouri courts decide whether retention is unjust by looking to the whole relationship between the parties:

> In determining whether it would be unjust to permit the enriched party to retain benefits, "the court uses equitable principles in considering the various factors surrounding the relationship such as change of position, hardship, unreasonable delay, unclean hands, bad faith and other equitable principles of defense."

*Mo. Pub. Entity Risk Mgmt. Fund*, 399 S.W.3d at 78 (quoting *Farmers New World Life Ins. Co. v. Jolley*, 747 S.W.2d 704, 705 (Mo. Ct. App. W.D. 1988).

USB also says it "has not obtained a benefit" unless the guarantors pay more than the Judgment Amount. Resp. at 5. That measures the benefit against the wrong baseline. The question is not whether USB will ever collect more than it is owed; it is what the advances did for USB. They kept the Hotel insured, powered, secured, and marketable through a sale that the buyer could have refused to close over uncured deterioration, and that sale delivered $13,299,435.43 to USB. Whether the benefit is measured by that recovery or by the value of a preserved asset over a neglected one, it flowed from Freeman's payments, and USB has kept it.

Nor does USB's "benefit conferred upon the defendant by the plaintiff" formulation, Resp. at 5, require that Freeman have written a check to USB. The Memorandum showed that Missouri equity looks to substance, and that a payment made indirectly, in self-protection against a perceived loss, does not cut off the equity it generates. Mem. § IV.D.2. The Response does not answer that showing. *See Am. Nursing Res., Inc. v. Forrest T. Jones & Co.*, 812 S.W.2d 790,

794, 796 (Mo. Ct. App. W.D. 1991) (subrogation; equity "does not stand on form," and a payor acting "in self-protection against a perceived loss" is no volunteer). Freeman paid the insurers, utilities, and contractors that kept USB's collateral saleable, rather than USB itself, to protect his own exposure as a guarantor of USB's debt. He is the opposite of an officious stranger.

Nor does it help USB to say that it retained only what the Consent Judgment gave it. Resp. at 5–6. Freeman does not ask USB to return a dollar of the $13,299,435.43. He asks that the balance USB seeks to take from him be reduced by the value of what his advances gave USB. USB identifies nothing in the Consent Judgment or the Settlement Agreement that addresses who bears the cost of preserving the collateral, or that forecloses the equity arising from Freeman's having borne it.

**E. The Response's remaining points do not alter the analysis.**

USB says Freeman "agreed to the sale of the Hotel, the Recovery Amount obtained from that sale, and the current deficiency," citing a closing statement. Resp. at 2 (citing ECF No. 318-10). Freeman does not dispute that the Hotel sold or that USB was paid $13,299,435.43. Pet. ¶ 11. And the closing statement, on USB's own description, lists the payoff to USB. Resp. at 2. USB identifies no term of that statement, the Settlement Agreement, or the Consent Judgment in which Freeman relinquished his right to reimbursement or to a credit. Waiver is "the intentional relinquishment of a known right," and when implied from conduct, the conduct must clearly and unequivocally show a purpose to relinquish it. *Shahan v. Shahan*, 988 S.W.2d 529, 534 (Mo. banc 1999). A closing statement showing the payoff to the lender is not conduct that unequivocally abandons a separate, court-ordered right to be reimbursed at that same closing.

USB also stresses that the Illinois Order predates the Consent Judgment and the sale. Resp. at 2, 6. The sequence helps Freeman. The Order provided that his advances would be

reimbursed "at closing of the sale" and ahead of any distribution to any lender; the closing came after the Consent Judgment; and USB was paid at that closing. That the priority was a matter of court record before USB was paid is the point, not a weakness.

## III. THE PETITION DOES NOT COLLATERALLY ATTACK THE CONSENT JUDGMENT.

USB characterizes the Petition as asking the Court "to reduce the amount of Debtor's liability under the Consent Judgment." Resp. at 2. Every setoff reduces what a creditor may collect; that is what a setoff is, and *Stewart Title* itself concerned a set-off against a determined indebtedness. Freeman does not challenge the Judgment Amount, the Partial Satisfaction (ECF No. 259), or his joint and several liability, and he does not invoke Rule 60(b). *See* Pet. ¶ 16, Mem. § IV.C. He asks the Court to exercise its authority over execution proceedings that USB itself initiated, *see* ECF Nos. 269–271; Fed. R. Civ. P. 69(a)(1), and to do so in equity, by declining to let USB take from him through garnishment an amount that equity treats as already contributed toward the recovery USB obtained. The Consent Judgment fixes the debt. It does not remove the Court's ability to ensure that the means of collecting it are equitable.

To the extent USB still contends, as it did in ECF No. 296, that the request comes too late, the Memorandum answered that contention, and the Response does not renew it. Among other things, $141,816.59 of the advances were made after the Consent Judgment was entered and could not have been raised as a defense to it. Mem. § IV.C.

## IV. ALTERNATIVELY, THE COURT SHOULD HOLD AN EVIDENTIARY HEARING AND CREDIT WHATEVER PORTION OF THE ADVANCES EQUITY SUPPORTS.

If the Court concludes that the equities depend on facts not yet in the record, such as Qualizza's ability to answer for the Illinois Order or the extent to which particular advances

preserved the sale, the appropriate course is a hearing, not denial on the papers. Restitution in Missouri is calibrated to the equities: an award is limited to the portion of the enrichment that would be unjust for the other party to retain, and where the amount of enrichment is disputed it is a question for the trier of fact. *See Mo. Pub. Entity Risk Mgmt. Fund*, 399 S.W.3d at 78–79; *Homecomings*, 343 S.W.3d at 685. Should the Court find that some portion of the advances falls outside the equity, it should credit the remainder rather than deny relief wholesale.

**CONCLUSION**

For these reasons, and those in the Petition and the Memorandum, Freeman respectfully requests that the Court (A) order registration of the Illinois Order pursuant to Mo. Rev. Stat. § 511.760 and Mo. Sup. Ct. R. 74.14; (B) order that the amount USB seeks to collect from Freeman by garnishment or otherwise be set off and credited by $528,037 or, in the alternative, by such amount as the Court finds equitable after an evidentiary hearing; and (C) grant such further relief as the Court deems just and proper.

Dated: September 21, 2026

Respectfully submitted,

**NEIL D. FREEMAN**

By: /s/ John R. Perkaus_____
One of his Attorneys

Admitted PRO HAC VICE
Perkaus & Farley LLC
1343 N. Wells Street
Chicago, IL 60610
t. 312.944.8200
f. 312.944.8227
e.john@perkausandfarley.com
Firm No. 15584

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2026, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: /s/ John R. Perkaus_____