**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **U.S. BANK NATIONAL ASSOCIATION,**<br>**Plaintiff, Judgment Creditor,**<br><br>**v.**<br><br>**MICHAEL QUALIZZA,**<br>**NEIL D. FREEMAN,**<br>**TIMOTHY DIXON,**<br>**Defendants, Judgment Debtors.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 4:21-cv-00120-MTS** |
| **MICHAEL QUALIZZA, NEIL D. FREEMAN,**<br>**TIMOTHY DIXON, DFQ MANAGEMENT, LLC, and 1501 WASHINGTON ST. LOUIS, LLC,**<br>**Counterclaim Plaintiffs,**<br><br>**v.**<br><br>**U.S. BANCORP COMMUNITY DEVELOPMENT CORPORATION, and U.S. BANK NATIONAL ASSOCIATION,**<br>**Counterclaim Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |

**PETITIONER NEIL D. FREEMAN'S REPLY IN SUPPORT OF HIS VERIFIED PETITION TO REGISTER FOREIGN JUDGMENT AND IN RESPONSE TO DEFENDANT MICHAEL S. QUALIZZA'S OPPOSITION (ECF NO. 330)**

Petitioner Neil D. Freeman ("Freeman"), by undersigned counsel, submits this reply in support of his Verified Petition to Register Foreign Judgment (ECF No. 322) (the "Petition" or "Pet.") and Memorandum in Support (ECF No. 323) (the "Memorandum" or "Mem."), and in response to Defendant Michael S. Qualizza's Response in Opposition (ECF No. 330) ("Qualizza

Resp.”).[1] Freeman replies separately to the Response of Judgment Creditor U.S. Bank National Association (“USB”) (ECF No. 327). Capitalized terms not defined here have the meanings given in the Petition and Memorandum.

**INTRODUCTION**

Qualizza’s Response makes four arguments: 1) that the Illinois Order cannot be “registered” here because it is interlocutory, is not a money judgment, and this Court is not a registration forum; 2) that the Order in any event does not reach the March 2026 closing; 3) that equity bars a credit because of certain closing-statement disbursements; and, alternatively, 4) that any credit should reduce the Judgment for all debtors after an accounting. None of his arguments defeat the claim.

Qualizza acknowledges that the Court “can and should consider what the Judgment Creditor may collect under its own Consent Judgment without ‘registering’ anything.” Qualizza Resp. at 7. That is the substance of Part B of the Petition, which rests on equity and on this Court’s authority under Rule 69(a)(1) over execution of its own judgment, independently of whether the Illinois Order can be registered. Pet. ¶ 15; Mem. §§ III, IV.D. Qualizza also offers no evidence contradicting the facts on which the credit rests. He relies on Freeman’s itemization of the $528,037, Qualizza Resp. ¶ 7; he does not deny that the advances were made, what they paid for, or that he contributed nothing to them; and he confirms that the Hotel closed on March 5, 2026, and that USB was paid $13,299,435.43 from the proceeds. *Id.* ¶¶ 2, 6. What he adds are arguments about labels (whether the Order is “final,” a “money judgment,” or “registrable”) and

---

[1] Qualizza also filed a “Memorandum” consisting of exhibit, case, and statute indices, a timeline, and an “argument map” (ECF No. **[331]**). Freeman treats it as part of the Response and responds here to its characterizations. To the extent it contains argument beyond the Response, Freeman objects. *See* E.D. Mo. L.R. 4.01(B)–(D).

an unclean-hands theory built on a closing statement whose bearing on the credit he never explains. None of this defeats the credit. In addition, that theory fails for a further reason: Qualizza signed the documents necessary to close the sale, never objected to the closing statement or any other closing document, and has waived any challenge to the payments it shows and to the $14,000,000 price at which he approved the sale.

## ARGUMENT

### I. THE COURT NEED NOT ENTERTAIN A FILING MADE PRO SE BY A PARTY WHO IS REPRESENTED BY COUNSEL.

Qualizza styles his Response as filed "pro se," Qualizza Resp. at 1, 12, and submitted it to the Clerk through the procedures for self-represented litigants. *Id.* at 13. But he is represented by counsel in this action. As set forth in U.S. Bank's Memorandum in Opposition to Qualizza's Motion to Quash, Dissolve, or Modify Writs of Garnishment filed June 30, 2026, (ECF No. 297), a litigant has no right to proceed simultaneously pro se and with the benefit of counsel. *See Carter v. Hassell*, No. 4:05CV2259, 2008 WL 2439846, at *2 (E.D. Mo. June 16, 2008) (quoting *United States v. Agofsky*, 20 F.3d 866, 872 (8th Cir. 1994)). Accordingly, a district court "has 'no obligation to entertain pro se motions filed by a represented party.'" *Prosser v. Nagaldinne*, No. 4:08CV44, 2008 WL 11410032, at *1 (E.D. Mo. Dec. 8, 2008) (quoting *Abdullah v. United States*, 240 F.3d 683, 686 (8th Cir. 2001)); *see also United States v. Rhone*, No. 4:12CR18, 2012 WL 6651881, at *1 (E.D. Mo. Dec. 20, 2012) (denying pro se motions filed by a represented defendant). Several of these decisions arose in criminal cases, but the principle does not depend on the kind of case: a party who has chosen counsel should speak through counsel, and the other parties should not be required to answer filings that counsel has not signed. Freeman respectfully submits that the Court may disregard the Response on that basis. In any event, the Response fails on the merits, as shown below.

## II. THE COURT CAN DECIDE THE CREDIT WITHOUT DECIDING WHETHER THE ILLINOIS ORDER CAN BE "REGISTERED."

### A. Qualizza acknowledges that the collectible amount may be determined without registration, and the credit rests on independent grounds.

Qualizza devotes most of his Response to arguing that the Illinois Order is not a registrable "foreign judgment." Qualizza Resp. at 4–7. Even if he were right, the consequence would be that Part A of the Petition is unnecessary, not that Part B fails. The Petition presented unjust enrichment as an independent ground for the credit, Pet. ¶ 15, Mem. § IV.D.1, and the Memorandum invoked both Rule 69(a)(1), under which the Court determines the equities among the parties before it in aid of execution, and 28 U.S.C. § 1738, which independently requires the Court to give the Illinois Order the effect it would have in Illinois. Mem. § III. Registration was offered as "the most direct and efficient vehicle" for putting the Order before the Court, *id.*, not as the only one. If the Court concludes that "registration" is the wrong label or vehicle, it should decline to register the Order and proceed to decide the credit, with the certified Order before it as a record of the Illinois court's directive and of the reimbursement priority in place when USB was paid. It should not deny the credit on that ground.

### B. The federal forum authorities address a different request.

Qualizza's authorities on registration in federal court—*Caruso v. Perlow*, 440 F. Supp. 2d 117 (D. Conn. 2006); *Amin v. Suthikant*, No. 95-6001-CV-SJ-6, 1995 WL 781142 (W.D. Mo. Nov. 22, 1995); and *Griffith v. Paran*, No. 2:19-cv-12030, ECF No. 15 (E.D. Mich. Jan. 16, 2020)—concern holders of state-court judgments who were seeking federal judgments, obtained by registration rather than by a civil action, so that federal enforcement remedies could be used against the judgment debtor. *See Caruso*, 440 F. Supp. 2d at 118 (plaintiff sought to transform state-court judgments "into federal judgments"). *Stanford v. Utley*, 341 F.2d 265, 267 (8th Cir.

1965), on which Qualizza also relies, concerned registration of a federal-court judgment under § 1963 and, as Qualizza describes it, contrasts that statute with § 511.760. It does not address a credit determined in aid of execution of this Court's own judgment. Freeman seeks no new federal judgment against anyone and does not seek to levy on any person's property under the Illinois Order. He asks the Court, in supervising execution of its own Consent Judgment and the garnishments USB initiated, ECF Nos. 269–271, to determine how much USB may still collect from him. That question arises under this Court's own judgment, and Rule 69(a)(1) governs it. Qualizza's own description of Rule 69 confirms the point: it supplies "methods by which a creditor may collect a judgment." Qualizza Resp. at 6–7 (quoting *In re Moss*, 267 B.R. 839, 843 (B.A.P. 8th Cir. 2001)). USB is that creditor, the collection is its collection, and the equities of that collection are before the Court. Qualizza's discussion of *Active Way* and Mo. Rev. Stat. § 511.778, which concern recognition of a foreign-country money judgment in a separate diversity action, is beside the point for the same reason.

### C. Qualizza's finality authorities involved instruments that remained open to change in the respect for which enforcement was sought.

Freeman does not dispute that Missouri courts describe finality as a condition of full faith and credit for registration and enforcement under the UEFJL. *E.g.*, *Estate of Angevine v. Evig*, 675 S.W.2d 440, 443 (Mo. Ct. App. 1984). But the instruments in Qualizza's cases stayed open to change in the very respect for which enforcement was sought: modifiable future child-support installments, *Siegel v. Mosier*, 632 S.W.2d 76, 78–79 (Mo. Ct. App. 1982), and a judgment against one of two defendants that reserved the claim against the other, *Angevine*, 675 S.W.2d at 441–43. Paragraph 4 of the Illinois Order is different. It is keyed to a single event— "closing of the sale of the Hotel," ECF No. 322-1 ¶ 4—and that event occurred on March 5, 2026. Qualizza Resp. ¶¶ 2, 6. Nothing about ¶ 4 remains to be decided before it operates, and Qualizza identifies

no order modifying, vacating, or staying ¶¶ 3–4 in the twenty months since they were entered. The only later ruling Qualizza identifies is the Illinois court's March 30, 2026, order, which he says denied the former Receiver's motion to retain jurisdiction, dismissed a counterclaim, denied Freeman's motion to dismiss, stayed discovery, and continued six motions. Qualizza Resp. ¶ 3; Qualizza Ex. B ¶¶ 1–3, 6–7. That order, entered less than a month after the closing, did not modify, vacate, or stay Freeman's rights to collection under the Certified Order ¶¶ 3–4. It denied in its entirety the former Receiver's "Motion to Retain Jurisdiction, to Amend the Comprehensive Receivership Order and for Other Relief," *id.* at 1, ¶ 1, and none of the six motions it continued concerns, by title, reimbursement of Freeman's advances. *Id.* ¶ 7(a)–(f). Qualizza's statement that "the fee-and-advances issues Freeman presents here remain before the Illinois court on continued motions," Qualizza Resp. ¶ 3, is not borne out by the order he attaches.

Two further points. First, the statute is not limited to final money judgments. It reaches "any judgment, decree or order" entitled to full faith and credit, Mo. Rev. Stat. **§ 511.760.1(1).** Also, the Shipley case cited by Qualizza does not apply as there the court held registration was refused because the instruments "do not award relief of any kind to any party," 472 S.W.3d 609, 612–13 (Mo. Ct. App. W.D. 2015). Paragraph 4 awards relief. Second, finality protects a court from enforcing, or giving preclusive effect to, something that may yet change. Freeman does not ask this Court to give the Order preclusive effect against anyone or to levy under it. Qualizza's remaining finality authorities do not address a credit determined in aid of execution of this Court's own final judgment: *Ohmer*, as Qualizza describes it, concerns execution on an interlocutory order, and *Gasca* is a Prison Litigation Reform Act attorney's-fee decision that Qualizza cites only for a general definition of a final judgment. Qualizza Resp. at 5.

### D. The Order need not be a money judgment, the contingency has occurred, and Qualizza cannot claim a judgment debtor's defenses while denying there is one.

Qualizza next argues that the Order is "not a money judgment," "names no judgment debtor," and creates only a "contingent expectancy." Qualizza Resp. at 5–6 (citing *Beaufort Transfer Co. v. Fischer Trucking Co.*, 357 F. Supp. 662, 667 (E.D. Mo. 1973)). The statute does not require a money judgment. The contingency on which Qualizza relies, the closing, has occurred, so the directive is no longer contingent. The amount is fixed: $528,037, itemized by payee, date, and source, and verified. Pet. ¶ 8 & Verification. And Freeman does not seek to levy on any debtor's property; he seeks a credit.

Qualizza also cannot have it both ways. He argues that the Illinois Order "was rendered against no one," so that there is no "judgment debtor." Qualizza Resp. at 5. Yet he invokes the judgment debtor's timing provisions and defenses under § 511.760.5, .7, and .8, *id.* at 1, and argues that setoff under § 511.760.8 is a defense "asserted by the defendant," *id.* at 9. If there is no judgment debtor, those provisions apply to no one. If there is one, Qualizza's point that the Order awarded nothing against anyone fails. Either way, § 511.760.8 does not govern Freeman's credit, which rests on equity and on Rule 69(a)(1), not on a defense to enforcement of the Illinois Order.

## III. NEITHER THE ORDER'S TEXT NOR THE SETTLEMENT AGREEMENT'S SILENCE DEFEATS THE CREDIT.

### A. The Order is not confined to the $200,000 capital call or to a particular transaction.

Qualizza argues that the Order responded only to a $200,000 capital call and to a "receiver-era" standoff and does not reach a sale contract signed later or a closing at a different price. Qualizza Resp. at 7–8. The text says otherwise. Paragraph 4 provides that "[a]ll funds

advanced by Freeman for operation of the Hotel shall be reimbursed at closing of the sale of the Hotel," ahead of "any distributions" to "any lender, equity or other vendor." ECF No. 322-1 ¶ 4. It is not limited to $200,000, to a buyer, or to a price. Nor does it have a cutoff date, so Qualizza's breakdown of when the advances were made, Qualizza Resp. ¶ 7, shows only that Freeman kept funding the Hotel until it closed. Paragraph 5 shows the Illinois court was aware that a sale was being negotiated. *Id.* ¶ 5. The "sale of the Hotel" to which ¶ 4 refers is the sale that occurred. Qualizza invokes the rule that courts "do not go beyond the language of the judgment," Qualizza Resp. at 8 (quoting *North American Savings Bank, F.S.B. v. Williamson*, 482 S.W.3d 862 (Mo. Ct. App. 2016)), but it is Qualizza who asks the Court to add limits that the language does not contain.

**B. Silence in the Settlement Agreement is not a waiver.**

Qualizza argues that Freeman "secured no provision" in the Settlement Agreement "preserving" the priority the Illinois Order had already given him, and so cannot revive it. Qualizza Resp. at 3, 7. Freeman had no need to preserve what the Order already provided, and the Memorandum explained that nothing in the Settlement Agreement addresses how sale proceeds would be allocated among the Borrower Parties and Guarantors or supersedes the priority the Order had established. Mem. §§ II.C, IV.C. Waiver is "the intentional relinquishment of a known right," and when it is implied from conduct, the conduct must clearly and unequivocally show a purpose to relinquish it. *Shahan v. Shahan*, 988 S.W.2d 529, 534 (Mo. banc 1999). Qualizza was a party to the same Settlement Agreement, Pet. ¶ 4, and identifies no term in which anyone relinquished the reimbursement directive.

### C. *Wilson* and *Morris* concern the administration of a fund, and no fund is before the Court.

Qualizza's reliance on *Louisville, Evansville & St. Louis Railroad Co. v. Wilson*, 138 U.S. 501 (1891), and *Morris v. Jones*, 329 U.S. 545 (1947), is misplaced. As Qualizza describes them, those cases address a court that is administering a fund and ranking competing claims to it. Qualizza Resp. at 8. No fund is before this Court. USB was paid at the March 5, 2026, closing. The proceeds were disbursed then, and the Illinois court has since denied the former Receiver's motion to retain jurisdiction. Qualizza Ex. B ¶ 1. The premise of *Wilson*, a court still distributing a fund, is absent. Freeman does not ask the Court to rank his claim ahead of USB's claim on a fund, and he does not contend that the Illinois Order gives him priority by virtue of its being a judgment. He asks that USB, having received the proceeds, not now collect from him the value of the benefit his advances conferred. That is a question of equity between Freeman and the party seeking to collect, addressed in Freeman's reply to USB.

## IV. EQUITY DOES NOT BAR THE CREDIT.

### A. Qualizza does not dispute the advances or his own non-contribution.

The Response relies on Freeman's itemization, Qualizza Resp. ¶ 7, and nowhere denies that Freeman and his entities made each payment, that the payments funded insurance, utilities, security, and restoration for the Hotel, or that Qualizza contributed nothing. The Illinois Order itself records that he "reiterated his refusal to provide any funding." ECF No. 322-1 ¶ 3. Qualizza's suggestion that advances must be proven "actually owed and actually benefit[ing] the property," Qualizza Resp. at 9 (citing *In re Fox Hill Office Investors, Ltd.*, 101 B.R. 1007 (Bankr. W.D. Mo. 1989), is met by the verified itemization of payee, date, amount, and source in the Petition, Pet. ¶ 8, and by the PSA provisions on which the advances depended. Mem. §§ II.B, IV.D. If the Court wants more, it may take evidence. *See* Part V below.

### B. Qualizza signed the documents necessary to close the sale, never objected to the closing statement, and has waived any challenge to the payments it shows.

The closing statement on which Qualizza's unclean-hands theory rests is a document he had every opportunity to review before closing. Qualizza, a co-manager of DFQ and a signatory of the PSA, Mem. § II.B, signed all of the documents necessary to close the sale of the Hotel, including the Seller's Closing Statement. He did not object to the closing statement or to any other closing document before, at, or after closing, had he done so the closing never would have taken place. The Response does not say otherwise. It does not claim that Qualizza objected, that he was unaware of the disbursements, or that his signature was procured by fraud or mistake.

That is waiver. Waiver is "the intentional relinquishment of a known right," and it may be implied from conduct that clearly and unequivocally shows a purpose to relinquish the right. *Shahan v. Shahan*, 988 S.W.2d 529, 534 (Mo. banc 1999). A co-manager who reviews and signs a closing statement that itemizes each payee and amount, including the $50,000 payment to counsel of which he now complains, and who signs every other document needed to close, has approved each itemized disbursement with knowledge of it. Having approved them, he cannot now attack them in order to defeat a credit sought by the co-obligor who funded the Hotel's preservation while Qualizza refused to.[2]

The same conduct defeats his unclean-hands theory. On Qualizza's own account of his authorities, the doctrine requires misconduct connected with the transaction at issue and injury to the party invoking it. Qualizza Resp. at 9. A disbursement that Qualizza himself approved in

[2] Freeman's reply to USB explains that a closing statement showing the payoff to USB did not waive Freeman's separate right to reimbursement. The two situations differ. Waiver requires knowledge of the right relinquished. The closing statement itemizes the disbursements to which Qualizza now objects, so approving it with knowledge of those items is approval of them. As the parties describe it, the statement does not itemize or address any payment to Freeman on account of the Illinois Order, and nothing in it manifests an intent by Freeman to abandon the reimbursement the Order directed.

writing is not misconduct as to him, and he cannot claim to have been injured by an act in which he joined. That Freeman also signed the statement, as USB notes (ECF No. 327 at 2), does not change this: the doctrine turns on injury to the party invoking it, and Qualizza cannot claim injury from disbursements he approved. For the same reason, he has waived any demand for an accounting of disbursements that he approved with knowledge of what they were. *Id.* at 10. If he believes that any Seller-side payment was improper notwithstanding his approval, that is a matter for the plenary actions he has filed. It is not a ground for denying Freeman a credit.

**C. Independently of waiver, the disbursements do not bear on the credit.**

Qualizza's theory rests on the closing statement's $50,000 payment to Freeman's counsel, $70,240.45 to another firm, $350,000 broker's commission, and $0.00 to the Seller. Qualizza Resp. at 3, 8–9. First, the credit Freeman seeks is a reduction of what USB may collect on account of advances that preserved USB's collateral. Nothing about how the Seller's closing costs were paid alters what the advances did or what USB received. Second, Qualizza does not say that the $50,000 was unearned, unauthorized, or improperly paid; he says only that it was paid, and he cites no evidence about the services or the authorization. Third, the party whose recovery the disbursements could affect, USB, treats the statement as operative and accepted its payoff under it. Qualizza Resp. at 3 (¶ 6). Fourth, that the Seller received nothing is arithmetic, not misconduct: the $14,000,000 price was below the $14,250,000 Judgment Amount, so no equity remained for the Seller, and a deficiency would have remained even had every dollar gone to USB.

**D. Qualizza agreed to the $14,000,000 price when he signed off on the sale, and his "price reduction" assertion is unsupported.**

Qualizza asserts that "the buyers extracted a $500,000 price reduction for property issues before closing," which he says shows that Freeman's stewardship, not any act of USB, caused

the shortfall. Qualizza Resp. at 9. But Qualizza signed off on the closing statement and the other documents for the sale of the Hotel at a price of $14,000,000, and in doing so he agreed to that price, including any reduction from the $16,500,000 PSA price. He does not claim that he objected to the price or to any reduction before, at, or after closing, that he did not understand what he was signing, or that his signature was procured by fraud or mistake. A co-manager who approves the sale at a stated price has approved that price. For the reasons given in Part IV.B, he has waived any complaint about it, *Shahan*, 988 S.W.2d at 534, and he cannot now attribute the reduction to Freeman in order to deny Freeman a credit.

The assertion fails on its own terms as well. Qualizza cites no record support, and the Response is unsworn. He offers nothing tying any price adjustment to an act or omission of Freeman rather than to conditions of the Property as it stood when the buyer inspected it under the PSA's "as is" terms, ECF No. 322-2 § 1.01. And on his own telling the buyer adjusted the price; it did not terminate, as PSA § 4.08 would have allowed had the Property deteriorated past the $50,000 threshold. If anything, that confirms that the Property's condition mattered to what USB recovered, which is the premise of Freeman's credit. Qualizza, who co-managed the Seller entities and contributed nothing to the Hotel's preservation, Mem. § II.B; Pet. ¶¶ 8–9; ECF No. 322-1 ¶ 3, is poorly placed to fault Freeman's stewardship.

**E. Qualizza's setoff authorities are inapposite.**

Qualizza's setoff authorities either concern the setoff of one judgment against another between the same parties, *Jegglin v. Orr*, 29 S.W.2d 721 (Mo. Ct. App. 1930), or are decisions of bankruptcy courts, *In re Bridge Info. Sys., Inc.*, 314 B.R. 421 (Bankr. E.D. Mo. 2004); *In re Fox Hill*, 101 B.R. 1007. Freeman does not seek to set off one judgment against another. He seeks a credit in equity, on the standard of *Stewart Title*, which Qualizza himself invokes, Qualizza

Resp. at 8: setoff is allowed "to effect a clear equity or to prevent an irremediable injustice." *Stewart Title Guar. Co. v. Cmty. Title Co.*, 924 S.W.2d 62, 65 (Mo. Ct. App. E.D. 1996). Freeman addresses that standard, and USB's mutuality argument, in his reply to USB.

## V. CONCLUSION

For these reasons, and those in the Petition, the Memorandum, and Freeman's reply to USB, Freeman respectfully requests that the Court (A) disregard Qualizza's Response as a filing made pro se by a represented party or, in the alternative, deny the relief it requests; (B) order registration of the Illinois Order pursuant to Mo. Rev. Stat. § 511.760 and Fed. R. Civ. P. 69(a)(1) or, in the alternative, consider the certified Illinois Order in this proceeding, under Rule 69(a)(1) and, to the extent applicable, 28 U.S.C. § 1738, as a record of the reimbursement priority in place when USB was paid; (C) order that the amount USB seeks to collect from Freeman be set off and credited by $528,037 or, in the alternative, by such amount as the Court finds equitable after an evidentiary hearing and (D) grant such further relief as the Court deems just and proper.

Dated: September 21, 2026

Respectfully submitted,

**NEIL D. FREEMAN**

By: */s/ John R. Perkaus*______
One of his Attorneys

Admitted PRO HAC VICE
Perkaus & Farley LLC
1343 N. Wells Street
Chicago, IL 60610
t. 312.944.8200
f. 312.944.8227
e.john@perkausandfarley.com
Firm No. 15584

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21 2026, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record, and that on the same date I served a copy by U.S. Mail, first class, postage prepaid, and by email, upon the following pro se party:

Michael S. Qualizza, Pro Se
1220 Marly Way
Austin, Texas 78733
mqualizza@yahoo.com

By: */s/ John R. Perkaus*_____